# EXHIBIT A



ACE INA Excess & Surplus Insurance Services, Inc.
455 Market Street, Suite 520
San Francisco, CA  94105

201-479-6331    *tel*
415-547-4494    *fax*

www.ace-ina.com

CA Agency License No. 0594384

James Mormile
*Vice President  - Professional Risk*

November 25, 2014

Eric Seyfried
AON Risk Services Central, Inc.
4 Overlook Point
Lincolnshire, IL  60069

**RE:**     **Insured:   Computer Sciences Corporation**
          Coverage:  ACE DigiTech® Digital Technology & Professional Liability
          Policy No:  EON G23658586 007
          **Company Paper:  Illinois Union Insurance Company**
          Policy Form:    PF-26996 (05/09) and MS- 5177a (11/14)
          Policy Period:  11/01/2014  to  11/01/2015

Dear Eric,

We are pleased to enclose the original and one (1) copy of the captioned policy.

As producer of record, you are responsible for collecting and filing all necessary surplus lines taxes, fees and documentation in accordance with state surplus lines laws and/or regulations, if applicable.

Also, as a reminder, all claim notices under this policy should be provided in writing to the following address:

ACE Professional Risk
P.O. Box 5105
Scranton, PA  18505-0518
Fax Number: 877-201-8787

ACEClaimsFirstNotice@acegroup.com

We have reviewed the policy and trust you will find it to be in order.  Should you have any questions or concerns, please advise us promptly.

Thank you for working with us on the placement of this risk.  We appreciate your support and look forward to working with you in the future.

Regards,

Jim Mormile
Vice President
ACE USA – Professional Risk

*One of the ACE Group of Insurance & Reinsurance Companies*



**Illinois Union Insurance Company**

# ACE DigiTech®
# Digital Technology & Professional Liability
# Insurance Policy
### Declarations

**This Policy is issued by the stock insurance company listed above.**

THIS POLICY IS A CLAIMS MADE AND REPORTED POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN,  THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSUREDS AND REPORTED TO THE  INSURER DURING  THE POLICY PERIOD AND  WHICH ARE  THE RESULT OF WRONGFUL ACTS COMMITTED ON OR AFTER THE RETROACTIVE DATE BUT BEFORE THE END OF THE POLICY PERIOD.  PLEASE READ THIS POLICY CAREFULLY.

THE  LIMITS  OF  LIABILITY  AVAILABLE  TO  PAY  INSURED  DAMAGES  SHALL  BE  REDUCED  BY  AMOUNTS INCURRED FOR CLAIMS EXPENSES.  FURTHER NOTE THAT AMOUNTS INCURRED FOR DAMAGES AND CLAIMS EXPENSES SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

TERMS  THAT  APPEAR  IN  BOLD  FACE  TYPE  HAVE  SPECIAL  MEANING.   PLEASE  REFER  TO  SECTION  II, DEFINITIONS.

| | |
|---|---|
| **Policy** No.   EON G23658586 007 | |
| Item 1.   **Named Insured**<br>Principal Address: | Computer Science Corporation<br>3170 Fairview Park Drive<br>Falls Church, VA  22042 |
| Item 2.   **Policy Period**:<br>From: 12:01 a.m.     11/01/2014          To: 12:01 a.m.      11/01/2015<br>(Local time at the address shown in Item 1) | |

Item 3.   Insuring Agreements Purchased (☒):

| | | |
|---|---|---|
| ☒ | A. | Technology and **Internet** Errors and Omissions Liability |
| ☒ | B. | **Electronic Media Activities** Liability |
| ☒ | C. | **Network Security** Liability |
| ☒ | D. | Privacy Liability |
| ☐ | E. | Data Breach Fund |
| ☐ | F. | **Network Extortion Threat** |
| ☐ | G. | **Miscellaneous Professional Services** Liability |

Item 4.   Limit of Liability (including **Claims Expenses**):

A.   Limit of Liability for Insuring Agreement(s) Purchased:

| | Each **Claim** | Aggregate |
|---|---|---|
| A. Technology and **Internet** Errors and Omissions Liability | $ 10,000,000 | $ 10,000,000 |
| B. **Electronic Media Activities** Liability | $ 10,000,000 | $ 10,000,000 |
| C. **Network  Security** Liability | $ 10,000,000 | $ 10,000,000 |
| D. Privacy Liability | $ 10,000,000 | $ 10,000,000 |
| E. Data Breach Fund | N/A | N/A |
| F. **Network Extortion Threat** | N/A | N/A |
| G. **Miscellaneous Professional Services** Liability | N/A | N/A |

|   |   |   |   |
|---|---|---|---|
| | B. | **Regulatory Proceeding** Sub-Limit of Liability: | $ 10,000,000 | $ 10,000,000 |
| | C. | Maximum **Policy** Aggregate Limit of Liability | | $ 10,000,000 |

**Item 5.** Retention:

$ 20,000,000 Each **Claim** for Coverages A, B, C, D and G (if selected)

NIL     Each **Claim** for Coverage E (if selected)

NIL     Each **Claim** for Coverage F (if selected)

**Item 6.** Notice to **Insurer**:

A.  Notice of **Claim**, **Wrongful Act**, or **Network Extortion Threat**:

ACE Professional Risk
P.O. Box 5105
Scranton, PA 18505-0518
Fax: 877.201.8787
ProfessionalLiabilityFirstNotice@acegroup.com

B.  In the event of a **Network Extortion Threat** where urgent crisis management support is required, please contact:

ACE USA Professional Risk Claims Hotline: 1 (800) 523-9254

C.  All other notices:
ACE USA, Professional Risk
Attention: Chief Underwriting Officer
1133 Avenue of the Americas, 32nd Floor
New York, NY 10036

**Item 7.  Policy** Premium:    ▮    ▬▬▬▬

**Item 8.  Miscellaneous Professional Services** (applicable only to Coverage G, if selected):
N/A

**Item 9.** Optional **Extended Reporting Period**:

A.  Additional Premium:    100% of Annual Premium

B.  Additional Period:    12 Month(s)

**Item 10.  Retroactive Date**:

| | | |
|---|---|---|
| A. | Technology and **Internet** Errors and Omissions Liability | 06/01/1984 |
| B. | **Electronic Media Activities** Liability | 06/01/1984 |
| C. | **Network Security** Liability | 10/01/2007 |
| D. | Privacy Liability | 10/01/2007 |
| E. | Data Breach Fund | N/A |
| F. | **Network Extortion Threat** | N/A |
| G. | **Miscellaneous Professional Services** Liability | N/A |

IN WITNESS WHEREOF, the **Insurer** has caused this **Policy** to be countersigned by a duly authorized representative of the **Insurer**.

DATE: _____November 1, 2014_____

JOHN J. LUPICA, President
Authorized Agent

 **Illinois Union Insurance Company**

# ACE DigiTech®
## Digital Technology & Professional Liability Insurance Policy

In consideration of the payment of the premium, in reliance upon the **Application**, and subject to the Declarations and the terms and conditions of this **Policy**, the **Insureds** and the **Insurer** agree as follows:

I.    INSURING AGREEMENTS

    A.    Technology and **Internet** Errors and Omissions Liability

        If Insuring Agreement A, Technology and **Internet** Errors and Omissions Liability coverage, is purchased pursuant to Item 3 of the Declarations, the **Insurer** will pay **Damages** and **Claims Expenses** of the **Insured** which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

    B.    **Media Activities** Liability

        If Insuring Agreement B, **Media Activities** Liability coverage, is purchased pursuant to Item 3 of the Declarations, the **Insurer** will pay **Damages** and **Claims Expenses** of the **Insured** which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

    C.    **Network Operations Security** Liability

        If Insuring Agreement C, **Network Operations Security** Liability coverage, is purchased pursuant to Item 3 of the Declarations, the **Insurer** will pay **Damages** and **Claims Expenses** of the **Insured** which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

    D.    Privacy Liability

        If Insuring Agreement D, Privacy Liability coverage, is purchased pursuant to Item 3 of the Declarations, the **Insurer** will pay **Damages** and **Claims Expenses** of the **Insured** which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

II.    DEFINITIONS

    When used in this **Policy**:

    A.    **Advertising** means promotional material (including branding, co-branding, sponsorships and endorsements), publicly disseminated on behalf of the **Insured**.

    B.    **Advertising Services** means promotional material (including branding, co-branding, sponsorships and endorsements), publicly disseminated by the **Insured** on behalf of others.

    C.    **Application** means all applications, including any attachments thereto, and all other information and materials submitted by or on behalf of the **Insureds** to the **Insurer** in connection with the **Insurer** underwriting this **Policy** or any policy of which this **Policy** is a direct or indirect renewal or replacement. All such applications, attachments, information and materials are deemed attached to and incorporated into this **Policy**.

    D.    **Bodily Injury** means injury to the body, sickness, or disease, and death. **Bodily Injury** also means mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock, whether or not resulting from injury to the body, sickness, disease or death of any person.

However, **Bodily Injury** does not mean mental injury, mental anguish, mental tension, emotional distress, pain and suffering, or shock resulting from a **Wrongful Act** for which coverage is provided under Section I, Insuring Agreements B or D.

E.   **Claim** means:

1.   with respect to Insuring Agreements A, B, C, and D:

   a.   a written demand against any **Insured** for monetary or non-monetary damages;

   b.   a civil proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief, commenced by the service of a complaint or similar pleading;

   c.   an arbitration proceeding against any **Insured** seeking monetary damages or non-monetary or injunctive relief;

   d.   a written request to toll or waive a statute of limitations relating to a potential **Claim** described in subparagraphs a through c directly above;

2.   also, with respect to Insuring Agreement D only, a **Regulatory Proceeding**;

including any appeal therefrom.

F.   **Claims Expenses** means:

1.   reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the **Insurer**, or by the **Insured** with the **Insurer's** prior written consent, in the investigation and defense of a covered **Claim** (except that such consent is not required for **Claims** that have not triggered the reporting threshold in section VIII, Notice);

2.   reasonable and necessary premiums for any appeal bond, attachment bond or similar bond, provided the **Insurer** shall have no obligation to apply for or furnish such bond; and

3.   prejudgment and post judgment interest awarded in any **Claim**.

**Claims Expenses** shall not include wages, salaries, fees or costs of directors, officers or employees of the **Insurer** or the **Insured**.

G.   **Class Action Claim** means any **Claim** brought**;**

1.   as a class action lawsuit pursuant to the Federal Rule of Civil Procedure 23 or similar state rules in the United States, or similar legislation defining class action lawsuits outside of the United States;

2.   by or on behalf of two or more natural persons if any of such natural persons are making a pattern and practice or systemic allegation and are seeking monetary relief on behalf of a class or group of complainants in order to resolve the complaint, whether or not such natural persons are represented by one or more legal counsel; or

3.   by a governmental entity, department or agency making a pattern and practice or systemic allegation or seeking monetary relief on behalf of a class or group of complainants in order to resolve the complaint.

H.   **Computer System** means computer hardware, software, and the data stored thereon, as well as associated input and output devices, data storage devices, networking equipment and electronic backup facilities.

I.   **Content** means any data, text, sounds, images or similar matter disseminated in any medium or by any means of expression, including but not limited to **Advertising** and **Advertising Services**. However, **Content** shall not include data, text, sounds, images or similar matter incorporated into or otherwise a part of **Technology Products**.

J.   **Corporate Director** means the Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, Chief Technology Officer, General Counsel of the **Named Insured**, or their organizational equivalents.

K.   **Damages** means all forms of monetary damages, including actual damages, statutory damages, punitive, exemplary, and multiple damages (where insurable), compensatory damages, funds paid into a Consumer Redress Fund, any award of prejudgment or post-judgment interest, and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected, the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies.

**Damages** shall not include:

1. any amount for which the **Insured** is not financially liable or legally obligated to pay;

2. taxes, fines, penalties, or sanctions imposed against an **Insured**;

3. matters uninsurable under the laws pursuant to which this **Policy** is construed;

4. the cost to comply with any injunctive or other non-monetary or declaratory relief, including specific performance, or any agreement to provide such relief;

5. loss of fees or profits by the **Insured**, return of fees, commissions or royalties by the **Insured**, or re-performance of services by the **Insured** or under the **Insured's** supervision; however, compensatory amounts equivalent to fees which are used as a measure of otherwise covered **Damages** shall not trigger this exclusion.

6. disgorgement of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled;

7. penalties of any nature, however denominated, arising by contract;

8. liquidated damages; and

9. any amounts other than those intended solely to compensate for a loss caused by a **Wrongful Act**.

**Damages** include punitive and exemplary damages to the extent such damages are insurable under the most favorable internal laws of any jurisdiction which has a substantial relationship to the **Insured**, the **Insurer**, this **Policy** or such **Claim**.

L. **Denial of Service Attack** means an event that is caused by a third party's malicious activity directed at the **Insured** which restricts or prevents access to an **Internet Website** or other network resource by other third parties authorized to gain access to that **Website** or resource.

M. **Domestic Partner** means any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law or under the provisions of any formal program established by the **Insured**.

N. **Extended Reporting Period** means the period(s) for the extension of coverage, if applicable, described in Section V, **Extended Reporting Periods**.

O. **Hacker Attack** means the **Unauthorized Use** of or **Unauthorized Access** to a **Computer System** other than the **Insured's Computer System**.

P. **Independent Contractor** means any independent contractor of the **Named Insured** or of a **Subsidiary** for which the **Insured** is legally responsible as a result of such contractor acting within the scope of its duties performed on behalf of the **Named Insured** or **Subsidiary**.

Q. **Insured** means:

1. The **Named Insured**;

2. **Subsidiaries** of the **Named Insured**, but only with respect to **Wrongful Acts** which occur while they are a **Subsidiary**;

3. any past, present or future principal, partner, officer, director, trustee or employee of the **Named Insured** or **Subsidiary**, but only with respect to the commission of a **Wrongful Act** committed within the scope of such person's duties performed on behalf of the **Named Insured** or **Subsidiary**;

4. any joint venture in which the **Named Insured** or any **Subsidiary** participates, but solely with respect to their ownership or management control interest in such joint venture, whichever is greater; and

5. any entity for which the **Named Insured** or any **Subsidiary** is required pursuant to a written agreement to provide insurance coverage as an additional insured, but only for **Wrongful Acts** of the **Named Insured** or **Subsidiary** that occur after such agreement;

R. **Insured's Computer System** means a **Computer System**:

1. leased, owned, used or operated by the **Insured**; or

2. operated for the benefit of the **Insured** by a third party service provider under written contract with the **Insured**.

S.    **Insurer** means the insurance company providing this insurance.

T.    **Internet** means the worldwide public network of computers which enables the transmission of electronic data and intranets, extranets and virtual private networks.

U.    **Interrelated Wrongful Acts** means all **Wrongful Acts** that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes.

V.    **Malicious Code** means unauthorized, corrupting or harmful software code, including but not limited to computer viruses, Trojan horses, keystroke loggers, cookies, spyware, adware, worms and logic bombs.

W.    **Media Activities** means the publishing, dissemination, releasing, gathering, transmission, production, webcasting, or other distribution of **Content** on behalf of the **Insured** or by the **Insured** for others.

X.    **Mediation** means a non-binding process in which a neutral panel or individual assists the parties in reaching a settlement agreement. To be considered **Mediation** under this **Policy**, the process must be as set forth in the Commercial Mediation Rules of the American Arbitration Association, or such other process as the **Insurer** may, at its sole option, approve.

Y.    **Named Insured** means the organization or natural person first specified in Item 1 of the Declarations.

Z.    **Network Operations Security** means those activities performed by the **Insured**, or by others on behalf of the **Insured**, to protect against **Unauthorized Access** to and the **Unauthorized Use** of the **Insured's Computer System**, or to protect against a **Denial of Service Attack**.

AA.   **Personal Information** means:

2.    an individual's name, social security number, medical or healthcare data,  other protected health information, drivers license number, state identification number, credit card number, debit card number, address, telephone number, account number, account histories, or passwords; and

3.    other nonpublic or identifying personal information as defined in **Privacy Regulations**;

in any format.  **Personal Information** shall not include information that is lawfully made available by the **Insured** to the general public for any reason, including but not limited to information from federal, state or local government records.

BB.   **Personal Injury** means injury arising out of one or more of the following offenses:

1.    false arrest, detention or imprisonment;

2.    malicious prosecution;

3.    libel, slander, or other defamatory or disparaging material;

4.    publication or an utterance in violation of an individual's right to privacy; and

5.    wrongful entry or eviction, or other invasion of the right to private occupancy.

CC.   **Policy** means, collectively, the Declarations, **Application**, this policy form and any endorsements.

DD.   **Policy Period** means the period of time specified in Item 2 of the Declarations, subject to prior termination pursuant to Section XIII, Termination of the **Policy**.

EE.   **Pollutants** means any substance exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by the United States Environmental Protection Agency or any federal, state, county, municipal or local counterpart thereof or any foreign equivalent. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials, including materials to be recycled, reconditioned, or reclaimed. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products, noise, fungus (including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi, but does not include any fungi intended by the **Insured** for consumption) and electric or magnetic or electromagnetic field.

FF.   **Privacy Regulations** means the following statutes and regulations associated with the control and use of personally identifiable financial, medical or other sensitive information:

1. Health Insurance Portability and Accountability Act of 1996 (Public Law 104-191);

2. Gramm-Leach-Bliley Act of 1999;

3. the California Security Breach Notification Act (CA SB 1386);

4. Identity Theft Red Flags under the Fair And Accurate Credit Transactions Act of 2003

5. Section 5(a) of the Federal Trade Commission Act, 15 U.S.C. sec. 45(a), but solely for alleged violations of unfair or deceptive acts or practices in or affecting commerce,  and

6. other existing and future state, federal, and foreign (i.e., non-United States) identity theft and privacy protection legislation, regulations or rules, whether or not similar to the above, which require commercial entities that collect, process, possess or store information about individuals to post privacy policies, adopt specific privacy controls, notify individuals in the event that **Personal Information** has potentially been compromised, or otherwise regulate the collection, processing, possession or storage of such information with respect to protecting the private nature of such information..

GG.   **Property Damage** means:

1. physical injury to, or loss or destruction of, tangible property, including the loss of use thereof; and

2. loss of use of tangible property which has not been physically injured, lost, damaged or destroyed.

However, **Property Damage** does not mean physical injury to, loss or destruction of, or loss of use of intangible property, including data.

HH.   **Regulatory Proceeding** means a request for information, demand, suit, civil investigation or civil proceeding by or on behalf of a government agency, commenced by a service of a complaint or similar pleading and alleging the violation of **Privacy Regulations** as a result of the **Insured's Wrongful Act**, and which may reasonably be expected to give rise to a covered **Claim** under Insuring Agreement D of this **Policy**.

II.   **Retroactive Date** means the date specified in Item 10 of the Declarations.

JJ.   **Subsidiary** means any entity that is not formed as a partnership or joint venture of which the **Named Insured** owns or has the right to vote more than 50% of the outstanding voting securities representing the present right to vote for election of directors, or the managers or members of the board of managers or equivalent executives of a limited liability company, on or before the inception date of the **Policy**, either directly or indirectly, in any combination, by one or more other **Subsidiaries**.

KK.   **Technology Products** means computer or telecommunications hardware, software, or related electronic equipment, including the design, development, manufacturing, assembly, distribution, licensing, leasing, sale, installation, repair or maintenance thereof.

LL.   **Technology Services** means:

1. information technology consulting and information systems or network analysis, design, programming or integration;

2. database design and the caching, collecting, compiling, processing, mining, or recording or analysis of data;

3. other related services, including:

   a. information system outsourcing;

   b. **Website** design, programming or maintenance;

   c. information system or **Website** hosting;

   d. **Internet** access services;

   e. **Internet** search or navigational tool provision;

   f. Electronic mail services;

   g. application software services delivery; and



4. those professional services provided or contracted to be provided by the **Insured** to others for a fee or other consideration in the ordinary course of the **Insured's** business;

MM. **Trade Secret** means information, including a formula, pattern, compilation, program, device, method, technique or process, that derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by other persons who can obtain value from its disclosure or use, so long as reasonable efforts have been made to maintain its secrecy.

NN. **Unauthorized Access** means the gaining of access to a **Computer System** by an unauthorized person or persons, or by an authorized person or persons in an unauthorized manner.

OO. **Unauthorized Use** means the use of a **Computer System** by an unauthorized person or persons or an authorized person in an unauthorized manner.

PP. **Website** means the software, content and other materials accessible via the **Internet** at a designated Uniform Resource Locator address.

QQ. **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, breach of duty, or **Personal Injury** offense actually or allegedly committed or attempted by any **Insured** in their capacity as such, or by any **Independent Contractor**:

1. With respect only to Insuring Agreement A, in:

   a. the **Insured's** or an **Independent Contractor's** rendering or failure to render **Technology Services** to others for a fee, or

   b. the failure of the **Insured's Technology Products** to perform the function or serve the purpose intended.

2. With respect only to Insuring Agreement B, in the course of the provision of **Media Activities**, including:

   a. any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, mental anguish, outrage or outrageous conduct;

   b. invasion, infringement or interference with the right to privacy or publicity, including false light, public disclosure of private facts, or the intrusion and commercial appropriation of a name, persona or likeness;

   c. plagiarism, piracy, or the misappropriation or unauthorized use of advertising ideas, advertising material, titles, literary or artistic formats, styles or performances;

   d. the infringement of copyright, domain name, trademark, trade name, trade dress, title or slogan, service mark, or service name; or

   e. negligence with respect to the **Insured's** or an **Independent Contractor's** creation or dissemination of **Content**.

3. With respect only to Insuring Agreement C, in the conduct of **Network Operations Security** that results in:

   a. the failure to prevent **Unauthorized Access** to or **Unauthorized Use** of the **Insured's Computer System**, that in turn results in:

      i. the theft, alteration or destruction of data, or

      ii. **Hacker Attacks** against third parties;



b. the denial of authorized users' access to the **Insured's Computer System**, unless such denial of access is caused by a mechanical or electrical failure;

c. the failure to prevent the participation by the **Insured's Computer System** in a **Denial of Service Attack** directed against the **Computer System** of a third party; or

d. the failure to prevent the transmission of **Malicious Code** from the **Insured's Computer System** to the **Computer System** of a third party.

4. With respect only to Insuring Agreement D, in:

a. the failure by the **Insured** or an **Independent Contractor** to properly handle, manage, store, destroy or otherwise control:

i. **Personal Information** in any format; or

ii. third party corporate information in any format specifically identified as confidential and protected under a nondisclosure agreement or similar contract; or

b. an unintentional violation of the **Insured's** privacy policy that results in the violation of any **Privacy Regulation**.

S. **Wrongful Employment Practices** means any actual or alleged:

1. wrongful dismissal or discharge or termination of employment, whether actual or constructive;

2. employment-related misrepresentation;

3. violation of any federal, state, or local laws (whether common or statutory) concerning employment or discrimination in employment;

4. sexual harassment or other unlawful workplace harassment;

5. wrongful deprivation of a career opportunity or failure to employ or promote;

6. wrongful discipline of employees;

7. retaliation against employees for the exercise of any legally protected right or for engaging in any legally protected activity;

8. negligent evaluation of employees;

9. failure to adopt adequate workplace or employment policies and procedures;

10. employment-related libel, slander, or defamation;

11. employment-related invasion of privacy, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under Insuring Agreement D of this **Policy**;

12. employment-related wrongful infliction of emotional distress, except with respect to that part of any **Claim** arising out of the loss of **Personal Information** which is otherwise covered under Insuring Agreement D of this **Policy**;

13. any actual or alleged employment-related discrimination, sexual harassment, or violation of a natural person's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

The foregoing definitions shall apply equally to the singular and plural forms of the respective words.

III. EXCLUSIONS

The **Insurer** shall not be liable for **Damages** or **Claims Expenses** on account of any **Claim**:

A. alleging, based upon, arising out of or attributable to any dishonest, fraudulent, criminal, malicious or intentionally wrongful act, error or omission, or any intentional or knowing violation of the law by an **Insured**. However, this exclusion shall not apply to **Claims Expenses** or the **Insurer's** duty to defend any such **Claim** until there is an adverse admission by, finding of fact against, or final adjudication against the **Insured** as to such conduct, at which time the **Insured** shall reimburse the **Insurer** for any **Claims Expenses** paid by the **Insurer**. This exclusion shall not apply to **Wrongful Acts** expressly covered under

Section I, Insuring Agreements C or D, but only if such **Wrongful Acts** were not committed by, or with the knowledge of any **Corporate Director**.

B.      alleging, based upon, arising out of or attributable to any **Bodily Injury** or **Property Damage**.

C.      for breach of any express, implied, actual or constructive contract, warranty, guarantee, or promise, including any actual or alleged liability assumed by the **Insured**, unless such liability would have attached to the **Insured** even in the absence of such contract, warranty, guarantee, or promise.  This exclusion will not apply to that part of a **Claim** factually underlying which is, or which factually arises out of, an actual or perceived failure to perform **Media Activities** or **Technology Services** with a reasonable or professional standard of care or consistent with industry standards or practices, without regard to whether any such failure is alleged or would itself be legally actionable.  Further, this exclusion will not apply to: (i) the failure of the **Insured's Technology Products** otherwise covered by section 1.b. of the definition of **Wrongful Act**; (ii) the breach of a nondisclosure agreement or similar contract to the extent such breach is otherwise covered by section 4.a.ii. of the definition of **Wrongful Act**; (iii) a **Wrongful Act** that is otherwise covered by section 4.b. of the definition of **Wrongful Act**; (iv) any other **Wrongful Act** as defined in under section 4.a.i. of the definition of **Wrongful Act**, where such **Wrongful Act** shall be defined, for the purposes of this exclusion, to mean a perceived or actual failure factually underlying which is, or which factually arises out of, a failure to properly handle, manage, destroy or otherwise control **Personal Information** in any format with a reasonable or professional standard of care, or consistent with industry standards or practices, or in accordance with **Privacy Regulations**, without regard to whether any such failure is alleged or itself would be legally actionable.

D.      alleging, based upon, arising out of or attributable to the provision of **Technology Services**, **Media Activities**, or **Technology Products**, for any entity if at the time these services were performed or products provided:

    1.     any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, was a partner, director, officer or employee of such entity; or

    2.     any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable, owned, directly or indirectly, 10% or more of any such entity if it was a publicly held company, or 30% or more of any such entity if it was a privately held company.

E.      brought or maintained by, on behalf of, or in the right of any **Insured**, or any other natural person or entity for whom or which an **Insured** is legally liable. However, this exclusion shall not apply to **Wrongful Acts** expressly covered under Section I, Insuring Agreement D.  Further, this exclusion shall not apply to **Claims** brought by additional **Insured's** as defined in subsection 6 of the definition of **Insured** in such claimant's capacity as a customer or client of another **Insured**;

F.      alleging, based upon, arising out of or attributable to any:

    1.     illegal discrimination of any kind;

    2.     humiliation, harassment or misconduct based upon, arising out of or related to any such discrimination;

    3.     **Wrongful Employment Practices**.

G.      alleging, based upon, arising out of or attributable to any price fixing, restraint of trade, monopolization, unfair trade practices or other violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving antitrust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes, or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

H.      alleging, based upon, arising out of or attributable to the violation of:

    1.     the Employee Retirement Income Security Act of 1974, as amended;

    2.     the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act, or any other federal, state or local securities law,

any rules or regulations promulgated thereunder, amendments thereof, or any similar federal, state or common law.

I.     alleging, based upon, arising out of or attributable to the gaining in fact of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled. However, this exclusion shall not apply to **Claims Expenses** or the **Insurer's** duty to defend any such **Claim** until there is a judgment against, binding arbitration against, adverse admission by, finding of fact against, or plea of *nolo contendere* or no contest by the **Insured**, at which time the **Insured** shall reimburse the **Insurer** for any **Claims Expenses** paid by the **Insurer**.

J.     alleging, based upon, arising out of or attributable to any fees, expenses, or costs paid to or charged by the **Insured**.

K.     alleging, based upon, arising out of or attributable to a **Wrongful Act** actually or allegedly committed prior to the beginning of the **Policy Period** if, on or before the **Retroactive Date**, a **Corporate Director** knew or reasonably could have foreseen that the **Wrongful Act** did or could lead to a **Claim**.

L.     alleging, based upon, arising out of, or attributable to:

    1.  any prior or pending litigation, **Claims**, arbitration, administrative or regulatory proceeding or investigation filed or commenced on or before the earlier of the inception date of this **Policy** or any other policy of which this is a renewal, replacement or succeeds in time, or alleging or derived from the same or substantially the same fact, circumstance or situation underlying or alleged therein; or

    2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** underlying or alleged in an event set forth in paragraph L.1. directly above, would constitute **Interrelated Wrongful Acts**.

M.    alleging, based upon, arising out of, or attributable to:

    1.  any **Wrongful Act**, fact, circumstance or situation which has been the subject of any written notice given under any other policy before the effective date of this **Policy**, provided that the insurer of such other policy has agreed to provide insurance coverage (either in whole or in part) for such noticed matter; or

    2.  any other **Wrongful Act** whenever occurring which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**.

N.     alleging, based upon, arising out of or attributable to:

    1.  the actual, alleged or threatened discharge, dispersal, release, escape, seepage, migration or disposal of **Pollutants**; or

    2.  any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

O.     alleging, based upon, arising out of or attributable to:

    a.  any electrical or mechanical failures or interruption, including but not limited to any electrical disturbance, surge, spike, brownout or blackout, and outages to gas, water, telephone, cable, satellite, telecommunications or other infrastructure

    b.  any failure, interruption, or outage to **Internet** access service provided by the **Internet** service provider that hosts the **Insured's Website**

However, this exclusion shall not apply to such failures or interruption under the **Insured's** operational control which are a result of:

    1.  the **Insured's Wrongful Act**; or

    2.  a **Denial of Service Attack**.

P.     for loss due to the inaccurate, inadequate, or incomplete description of the price of goods, products or services, the disclosure of fees, or as a result of the **Insured's** cost guarantees, cost representations, contract price, pricing guarantees or estimates of probable costs or cost estimates being exceeded, or any guarantee or promise of costs savings, return on investment, or profitability.

Q.  alleging, based upon, arising out of or attributable to fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God or any other similar physical event, provided that, as to each of the foregoing events, such event is not reasonably under the control of the **Insured**.

R.  alleging, based upon, arising out of or attributable to war, invasion, acts of foreign enemies, hostilities or warlike operations (whether war is declared or not), strike, lock-out, riot, civil war, rebellion, revolution, insurrection, civil commotion assuming the proportions of or amounting to an uprising, military or usurped power.

S.  alleging, based upon, arising out of or attributable to any costs or expenses incurred by any **Insured** or others to recall, repair, replace, upgrade, supplement or remove the **Insured's** products, including products which incorporate the **Insured's** products or services from the marketplace.

T.  alleging, based upon, arising out of or attributable to the manufacturing, mining, use, sale, installation, removal, distribution of or exposure to asbestos, materials or products containing asbestos, asbestos fibers or dust.

U.  alleging, based upon, arising out of or attributable to the planning, construction, maintenance, operation or use of any nuclear reactor, nuclear waste, storage or disposal site, or any other nuclear facility; the transportation of nuclear material, or any nuclear reaction or radiation, or radioactive contamination, regardless of its cause.

V.  alleging, based upon, arising out of or attributable to false, deceptive or unfair business practices in violation of consumer protection laws, or false or deceptive advertising. However, this exclusion shall not apply to **Claims Expenses** or the **Insurer's** duty to defend any such **Claim** until there is a judgment against, binding arbitration against, adverse admission by, finding of fact against, or plea of *nolo contendere* or no contest by the **Insured**, at which time the **Insured** shall reimburse the **Insurer** for any **Claims Expenses** paid by the **Insurer**.  However, except with respect to false or deceptive advertising under Insuring Agreements C and D, this exclusion shall not apply to a **Regulatory Proceeding** for that portion of **Damages** or **Claims Expenses** allocated to numbered paragraph 5 of the definition of **Privacy Regulations** or similar regulations.

W.  alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any patent or **Trade Secret**.

X.  alleging, based upon, arising out of or attributable to any validity, invalidity, infringement, violation or misappropriation of any copyright, service mark, trade name, trademark or other intellectual property of any third party. However, this exclusion shall not apply to Section I, Insuring Agreement B.  Further, this exclusion shall not apply to that part of any **Claim** arising from the unintentional infringement of copyright solely with respect to software code and design.

Y.  alleging, based upon, arising out of or attributable to the development of **Content** by the **Insured** for others, in the performance of **Advertising Services**.

Z.  alleging, based upon, arising out of or attributable to any unsolicited electronic dissemination of faxes, e-mails or other communications to multiple actual or prospective customers of the **Insured**, any **Subsidiary**, or any other third party, including but not limited to actions brought under the Telephone Consumer Protection Act, any federal or state anti-spam statutes, and/or any other federal or state statute, law or regulation relating to a person's or entity's right of seclusion.

AA. alleging, based upon, arising out of or attributable to any action brought by or on behalf of the Federal Trade Commission, the Federal Communications Commission, or any other federal, state, or local government agency or ASCAP, SESAC, BMI or other licensing or rights organizations in such entity's regulatory, quasi-regulatory, or official capacity, function or duty. This exclusion shall not apply to **Wrongful Acts** expressly covered under Section I, Insuring Agreement D, or to **Wrongful Acts** in the **Insured's** provision of **Technology Services**, **Technology Products**, or **Media Activities** to such entities, agencies, or organizations where such entities, agencies, or organizations are direct or indirect customers of the **Named Insured** or any **Subsidiary**;

BB. alleging, based upon, arising out of or attributable to the failure of any digital rights management software or other copy protection mechanism incorporated into the **Insured's Technology Products**.

CC.     alleging, based upon, arising out of or attributable to the unauthorized collection of **Personal Information** by or on behalf of the **Insured**, including but not limited to the collection of **Personal Information** by or on behalf of the **Insured** using cookies, spyware or other **Malicious Code** or the failure to provide adequate notice that such information is being collected by or on behalf of the **Insured**.

DD.     alleging, based upon, arising out of or attributable to the **Insured's** intentional failure to disclose the loss of **Personal Information** in violation of any law or regulation, but only if such intentional failure to disclose was committed by, or with the knowledge of any **Corporate Director**, however if there is a final adjudication that the **Insured** did not commit the aforementioned conduct, this exclusion shall not apply.

IV.     ESTATES, LEGAL REPRESENTATIVES AND SPOUSES

The estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** of **Insureds** shall be considered **Insureds** under this **Policy**, but coverage is afforded to such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners** only for a **Claim** arising solely out of their status as such and, in the case of a spouse or **Domestic Partner**, where the **Claim** seeks damages from marital community property, jointly held property or property transferred from the **Insured** to the spouse or **Domestic Partner**. No coverage is provided for any **Wrongful Act** of an estate, heir, legal representative, assign, spouse or **Domestic Partner**. All of the terms and conditions of this **Policy** including, without limitation, the Retention shown in Item 5 of the Declarations applicable to **Damages** or **Claims Expenses** incurred by **Insureds**, shall also apply to **Damages**, or **Claims Expenses** incurred by such estates, heirs, legal representatives, assigns, spouses and **Domestic Partners**.

V.      **EXTENDED REPORTING PERIODS**

If the **Insurer** terminates or does not renew this **Policy** (other than for failure to pay a premium when due), or if the **Named Insured** terminates or does not renew this **Policy**, the **Named Insured** shall have the right, upon payment of the additional premium described below, to a continuation of the coverage granted by this **Policy** for at least one **Extended Reporting Period** as follows:

A.      Automatic **Extended Reporting Period**

The **Named Insured** shall have continued coverage granted by this **Policy** for a period of 60 days following the effective date of such termination or nonrenewal, but only for **Claims** first made during such 60 days and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal. This Automatic **Extended Reporting Period** shall immediately expire upon the purchase of replacement coverage by the **Named Insured**.

B.      Optional **Extended Reporting Period**

The **Named Insured** shall have the right, upon payment of the additional premium set forth in Item 9A of the Declarations, to an Optional **Extended Reporting Period**, for the period set forth in Item 9B of the Declarations following the effective date of such termination or nonrenewal, but only for **Claims** first made during such Optional **Extended Reporting Period** and arising from **Wrongful Acts** taking place prior to the effective date of such termination or nonrenewal.

This right to continue coverage shall lapse unless written notice of such election is given by the **Named Insured** to the **Insurer**, and the **Insurer** receives payment of the additional premium within 60 days following the effective date of termination or nonrenewal.

The first 60 days of the Optional **Extended Reporting Period**, if it becomes effective, shall run concurrently with the Automatic **Extended Reporting Period**.

C.      The **Insurer** shall give the **Named Insured** notice of the premium due for the Optional **Extended Reporting Period** as soon as practicable following the date the **Named Insured** gives such notice of such election, and such premium shall be paid by the **Named Insured** to the **Insurer** within 10 days following the date of such notice by the **Insurer** of the premium due.  The Optional **Extended Reporting Period** is not cancelable and the entire premium for the Optional **Extended Reporting Period** shall be deemed fully earned and non-refundable upon payment.

The Automatic and Optional **Extended Reporting Periods** shall be part of and not in addition to the Limit of Liability for the immediately preceding **Policy Period**.

The Automatic and Optional **Extended Reporting Periods** shall not increase or reinstate the Limit of Liability, which shall be the maximum liability of the **Insurer** for the **Policy Period** and the Automatic and Optional **Extended Reporting Period**, combined.

D.  A change in **Policy** terms, conditions, exclusions and/or premiums shall not be considered a nonrenewal for purposes of triggering the rights to the Automatic or Optional **Extended Reporting Period**.

VI.  LIMITS OF LIABILITY

Regardless of the number of Insuring Agreements purchased under this **Policy**, **Insureds** against whom **Claims** are brought, **Claims** made or persons or entities making **Claims**:

A.  Limit of Liability for Insuring Agreement(s) Purchased

1.  With respect to Insuring Agreements A, B, C, and D:

    a.  the Each **Claim** Limit of Liability stated in Item 4A of the Declarations for a purchased Insuring Agreement is the **Insurer's** maximum liability under that Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of each **Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

    b.  the Aggregate Limit of Liability stated in Item 4A of the Declarations for a purchased Insuring Agreement is the **Insurer's** maximum liability under that Insuring Agreement for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** combined in the aggregate, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

2.  With respect to Insuring Agreement D only, and notwithstanding the otherwise applicable Each **Claim** and Aggregate Limits of Liability stated in Item 4A of the Declarations:

    a.  The Each **Claim Regulatory Proceeding** Sub-Limit of Liability stated in Item 4B of the Declarations is the **Insurer's** maximum liability under Insuring Agreement D for the sum of all **Damages** and all **Claims Expenses** incurred because of each **Regulatory Proceeding Claim**, including each **Claim** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

    b.  The Aggregate **Regulatory Proceeding** Sub-Limit of Liability stated in Item 4B of the Declarations is the **Insurer's** maximum liability under Insuring Agreement D for the sum of all **Damages** and all **Claims Expenses** incurred because all **Regulatory Proceeding Claims** combined in the aggregate, including all **Claims** alleging any **Interrelated Wrongful Acts**, first made and reported during the **Policy Period**.

    The **Regulatory Proceeding** Sub-Limit of Liability shall be part of and not in addition to the otherwise applicable Each **Claim** or Aggregate Limits of Liability stated in Item 4A of the Declarations, and will not increase the **Insurer's** Limit of Liability as provided therein.

5.  All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**.

6.  **Claims Expenses** shall be part of and not in addition to the applicable Aggregate Limit of Liability stated in Item 4A of the Declarations, and shall reduce such Aggregate Limit of Liability.  If the applicable Limit of Liability is exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished. The **Insurer** is entitled to pay **Damages** and **Claims Expenses** as they become due and payable by the **Insureds**, without consideration of other future payment obligations.

B.    Maximum **Policy** Aggregate Limit of Liability

The Maximum **Policy** Aggregate Limit of Liability stated in Item 4C of the Declarations is the **Insurer's** maximum liability under all Insuring Agreements purchased for the sum of all **Damages** and all **Claims Expenses** because of all **Claims** under this **Policy**.

C.    All **Claims** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of the **Insureds** shall be deemed to be one **Claim**, and such **Claim** shall be deemed to be first made on the date the earliest of such **Claims** is first made, regardless of whether such date is before or during the **Policy Period**. All **Damages** and **Claims Expenses** resulting from a single **Claim** shall be deemed, respectively, a single **Damage** or **Claims Expense**.

D.    **Damages** and **Claims Expenses** shall be part of and not in addition to the applicable Limit(s) of Liability shown in Item 4C of the Declarations, and **Damages** and **Claims Expenses** shall reduce such Limit(s) of Liability. If the Limit(s) of Liability are exhausted by payment of **Damages** or **Claims Expenses**, the obligations of the **Insurer** under this **Policy** shall be completely fulfilled and extinguished.

## VII.    RETENTION

A.    The liability of the **Insurer** shall apply only to that part of **Damages** and **Claims Expenses** which are in excess of the applicable Retention amount shown in Item 5 of the Declarations. Such Retention shall be borne uninsured by the **Named Insured** and at the risk of all **Insureds**.

B.    A single Retention amount shall apply to **Damages** and **Claims Expenses** arising from all **Claims** alleging **Interrelated Wrongful Acts**.

C.    If different parts of a single **Claim** are subject to different Retentions, the applicable Retention shall be applied separately to each part of the **Damages** and **Claim Expenses**, but the sum of such Retentions shall not exceed the largest applicable Retention.

## VIII.    NOTICE

A.    The **Insured** shall, as a condition precedent to their rights under this **Policy**, give to the **Insurer** written notice as soon as practicable, but no later than 30 days after the expiration of the **Policy Period**, of any **Claim**:

1.    in which $1,000,000 or more in **Claims Expenses** have been incurred;

2.    that is a **Class Action Claim**; or,

3.    in which a **Corporate Director**, the **Named Insured's** Director of Risk Management, or the **Named Insured's** Deputy General Counsel - Litigation (including the functional equivalent of the aforementioned positions) reasonably believes that the sum of **Claims Expenses** and **Damages** will exceed $5,000,000;

B.    With respect to **Claims** not referenced in VIIIA directly above, in lieu of individual written notice of each **Claim** as referenced above, the **Insured** shall provide the **Insurer** with status reports on all **Claims** reported to the **Insurer** via a **Claims** bordereau on a quarterly basis, but in no event later than 30 days after: (i) the end of the **Policy Period**, or (ii) with respect to **Claims** first made during any applicable Automatic or Optional **Extended Reporting Period**, the end of such Automatic or Optional **Extended Reporting Period**. Such bordereau shall include the following information with respect to each **Claim** listed on the bordereau:

Identity of Claimant

Date **Claim** first made against **Insured**

Brief description of the **Claim**

Claimant's monetary demand

Identity of counsel retained to defend the **Insured**

Current status of **Claim** (to be updated quarterly)

The **Insurer** may at any time request full and specific reporting as to an individual **Claim** on a bordereau, which must then be promptly reported by the **Insured** to the **Insurer**.

C. If, during the **Policy Period**, any **Insured** becomes aware of any specific **Wrongful Act** which may reasonably give rise to a future **Claim** covered under this **Policy**, and if the **Insureds** give written notice to the **Insurer** during the **Policy Period**, the Automatic **Extended Reporting Period**, or, if elected, the Optional **Extended Reporting Period** of:

1. the identity of the potential claimants;

2. a description of the anticipated **Wrongful Act** allegations;

3. the identity of the **Insureds** allegedly involved;

4. the circumstances by which the **Insureds** first became aware of the **Wrongful Act**;

5. the consequences which have resulted or may result; and

6. the nature of the potential monetary damages;

then any **Claim** which arises out of such **Wrongful Act** shall be deemed to have been first made at the time such written notice was received by the **Insurer**. No coverage is provided for fees, expenses and other costs incurred prior to the time such **Wrongful Act** results in a **Claim**.

D. All notices under any provision of this **Policy** shall be in writing and given by prepaid express courier or certified mail properly addressed to the appropriate party. Notice to the **Insureds** may be given to the **Named Insured** at the address shown in Item 1 of the Declarations. Notice to the **Insurer** of any **Claim** or **Wrongful Act** shall be given to the **Insurer** at the address set forth in Item 6A of the Declarations. All other notices to the **Insurer** under this **Policy** shall be given to the **Insurer** at the address set forth in Item 6C of the Declarations. Notice given as described above shall be deemed to be received and effective upon actual receipt thereof by the addressee, or one day following the date such notice is sent, whichever is earlier.

E. No notice that may be given during the **Policy Period** under section VIII, Notice, at subsection B may be given during the **Extended Reporting Periods**, if elected.

F. A **Claim** shall be deemed "first made against the **Insured**" when a **Corporate Director**, the **Named Insured's** Director of Risk Management, or the **Named Insured's** Deputy General Counsel - Litigation (including the functional equivalent of the aforementioned positions) first becomes aware of any **Claim**.

IX.   DEFENSE AND SETTLEMENT

A. The **Insurer** shall have the right and duty to defend any covered **Claim**, except for a **Regulatory Proceeding**, brought against the **Insured** even if such **Claim** is groundless, false or fraudulent. The **Insurer** shall have the right, but not the duty, to defend any **Regulatory Proceeding**. The **Insured** shall not 1) admit or assume liability or settle or negotiate to settle any **Claim**; or 2) incur any **Claims Expenses** (except with respect to **Claims** that have not triggered the reporting threshold stated in Item VIII, Notice) without the prior written consent of the **Insurer**. The **Insured** shall have the right to appoint counsel, after notification to the **Insurer** of the name of counsel and counsel's hourly rates (and subject to the **Insurer's** reasonable consent and approval) to defend any covered **Claim**. If requested by the **Insurer**, the **Named Insured** shall ensure that counsel forward a copy of all statements for legal services rendered directly to the **Insurer**. The **Insurer** shall have the right, at its own cost, to retain counsel to associate in the investigation and defense of a **Claim** as it deems necessary.

B. The **Insurer** shall not settle any **Claim** without the written consent of the **Named Insured**. If the **Named Insured** refuses to consent to a settlement or a compromise recommended by the **Insurer** and acceptable to the claimant, then the **Insurer's** Limit of Liability under this **Policy** with respect to such **Claim** shall be reduced to the amount of **Damages** for which the **Claim** could have been settled plus all **Claims Expenses** incurred up to the time the **Insurer** made its recommendation to the **Named Insured**, plus 50% of all **Damages** and **Claims Expenses** incurred after such recommendation, which amount shall not exceed that portion of any applicable Aggregate Limit of Liability that remains unexhausted by payment of **Damages** and **Claims Expenses**, or by any combination thereof.

C.  The **Insurer** shall not be obligated to investigate, defend, pay or settle, or continue to investigate, defend, pay or settle any **Claim** after any applicable Limit of Liability specified in Item 4 of the Declarations has been exhausted by payment of **Damages** or **Claims Expenses** or by any combination thereof, or after the **Insurer** has deposited the remainder of any unexhausted applicable Limit of Liability into a court of competent jurisdiction. In either such case, the **Insurer** shall have the right to withdraw from the further investigation, defense, payment or settlement of such **Claim** by tendering control of such **Claim** to the **Insured**.

D.  The **Insured** shall cooperate with the **Insurer**, and provide to the **Insurer** all information and assistance which the **Insurer** reasonably requests including but not limited to attending hearings, depositions and trials and assistance in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and conducting the defense of any **Claim** covered by this **Policy**. The **Insured** shall do nothing that may prejudice the **Insurer's** position. The **Insureds** shall immediately forward to the **Insurer**, at the address indicated in Item 6A of the Declarations, every demand, notice, summons, or other process or pleading received by the **Insured** or its representatives.

X.  OTHER INSURANCE

If any **Damages** or **Claims Expenses** covered under this **Policy** are covered under any other valid and collectible insurance, then this **Policy** shall cover such **Damages** or **Claims Expenses** subject to the **Policy** terms and conditions, only to the extent that the amount of such **Damages** or **Claims Expenses** are in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability provided by this **Policy**.

XI.  MATERIAL CHANGES IN CONDITIONS

A.  Acquisition or Creation of Another Organization

If, during the **Policy Period**, the **Named Insured**:

1.  acquires voting securities in another organization or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

2.  acquires any organization by merger into or consolidation with the **Named Insured**;

then, subject to the terms and conditions of this **Policy**, such organization shall be covered under this **Policy** but only with respect to **Claims** for **Wrongful Acts** taking place after such acquisition or creation, unless the **Insurer** agrees to provide coverage by endorsement for **Wrongful Acts** taking place prior to such acquisition or creation.

If the total assets of such acquired organization, as reflected in the then most recent consolidated financial statements of the organization, exceeds 10% of the total assets of the **Named Insured** and the **Subsidiaries** as reflected in the then most recent consolidated financial statements of the **Named Insured**, the **Named Insured**, as a condition precedent to coverage with respect to such **Insureds**, shall, no later than 60 days after the effective date of such acquisition or creation:

1.  give written notice of such acquisition or creation to the **Insurer**;

2.  pay any additional premium required by the **Insurer**; and

3.  agree to any additional terms and conditions of this **Policy** as required by the **Insurer**.

B.  Acquisition of the **Named Insured**

If, during the **Policy Period**, any of the following events occurs:

1.  the acquisition of the **Named Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of the **Named Insured** into or with another entity such that the **Named Insured** is not the surviving entity; or

2.  the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate at least 50% of the directors of the **Named Insured**;

then coverage under this **Policy** will continue in full force and effect until termination of this **Policy**, but only with respect to **Claims** for **Wrongful Acts** taking place before such event. Coverage under this **Policy** will cease as of the effective date of such event with respect to **Claims** for **Wrongful Acts** taking place after such event. This **Policy** may not be cancelled after the effective time of the event, and the entire premium for this **Policy** shall be deemed earned as of such time.

C.    Termination of a **Subsidiary**

If before or during the **Policy Period** an organization ceases to be a **Subsidiary**, coverage with respect to the **Subsidiary** and its **Insured Persons** shall continue until termination of this **Policy**. Such coverage continuation shall apply only with respect to **Claims** for **Wrongful Acts** taking place prior to the date such organization ceased to be a **Subsidiary**.

XII.    REPRESENTATIONS

A.    The **Insureds** represent and acknowledge that the statements and information contained in the **Application**, including all information provided concerning network security policies and procedures, information management policies and procedures, and business continuity plans and policies, are true and accurate and are the basis of this **Policy** and are to be considered as incorporated into and constituting a part of this **Policy**.

B.    It is understood and agreed that:

1.    this **Policy** is issued in reliance upon the truth and accuracy of such representations;

2.    the **Insureds** have and will provide accurate information with regard to loss control audits and network security assessments as required by the **Insurer**; and

3.    if any material representations or information are not true, accurate and complete, this **Policy** shall be null and void in its entirety and the Insurer shall have no liability hereunder.

XIII.    TERMINATION OF THE **POLICY**

A.    This **Policy** shall terminate at the earliest of the following times:

1.    the effective date of termination specified in a prior written notice by the **Named Insured** to the **Insurer**;

2.    90 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer**;

3.    10 days after receipt by the **Named Insured** of a written notice of termination from the **Insurer** for failure to pay a premium when due, unless the premium is paid within such 10 day period;

4.    upon expiration of the **Policy Period** as set forth in Item 2 of the Declarations; or

5.    at such other time as may be agreed upon by the **Insurer** and the **Named Insured**.

B.    If the **Policy** is terminated by the **Insurer** or the **Named Insured**, the **Insurer** shall refund the unearned premium computed *pro rata*. Payment or tender of any unearned premium by the **Insurer** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

XIV.    TERRITORY AND VALUATION

A.    All premiums, limits, retentions, **Damages**, **Claims Expenses**, and other amounts under this **Policy** are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or another element of loss under this **Policy** is stated in a currency other than United States of America dollars, payment under this **Policy** shall be made in United States dollars at the applicable rate of exchange as published in *The Wall Street Journal* as of the date the final judgment is reached, the amount of the settlement is agreed upon or the other element of loss is due, respectively, or, if not published on such date, the next date of publication of *The Wall Street Journal*.

B.     Coverage provided under this **Policy** shall extend to **Wrongful Acts** and **Claims** taking place, brought or maintained anywhere in the world.

XV.     SUBROGATION

In the event of any payment under this **Policy**, the **Insurer** shall be subrogated to the extent of such payment to all the rights of recovery of the **Insureds**. The **Insureds** shall execute all papers required and shall do everything necessary after a **Claim** to secure and preserve such rights, including the execution of such documents necessary to enable the **Insurer** effectively to bring suit or otherwise pursue subrogation rights in the name of the **Insureds**.

XVI.     ACTION AGAINST THE **INSURER** AND BANKRUPTCY

Except as provided in Section XIX, Alternative Dispute Resolution, no action shall lie against the **Insurer**. No person or organization shall have any right under this **Policy** to join the **Insurer** as a party to any action against any **Insured** to determine the liability of the **Insured** nor shall the **Insurer** be impleaded by any **Insured** or its legal representatives.  Bankruptcy or insolvency of any **Insured** or of the estate of any **Insured** shall not relieve the **Insurer** of its obligations nor deprive the **Insurer** of its rights or defenses under this **Policy**.

XVII.     AUTHORIZATION CLAUSE

By acceptance of this **Policy**, the **Named Insured** agrees to act on behalf of all **Insureds** with respect to the giving of notice of **Claim**, the giving or receiving of notice of termination or non-renewal, the payment of premiums, the receiving of any premiums that may become due under this **Policy**, the agreement to and acceptance of endorsements, consenting to any settlement, exercising the right to the **Extended Reporting Period**, and the giving or receiving of any other notice provided for in this **Policy**, and all **Insureds** agree that the **Named Insured** shall so act on their behalf.

XVIII.     ALTERATION, ASSIGNMENT AND HEADINGS

A.     Notice to any agent or knowledge possessed by any agent or by any other person shall not affect a waiver or a change in any part of this **Policy** nor prevent the **Insurer** from asserting any right under the terms of this **Policy**.

B.     No change in, modification of, or assignment of interest under this **Policy** shall be effective except when made by a written endorsement to this **Policy** which is signed by an authorized representative of the **Insurer**.

C.     The titles and headings to the various parts, sections, subsections and endorsements of the **Policy** are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such parts, sections, subsections or endorsements.

XIX.     ALTERNATIVE DISPUTE RESOLUTION

The **Insureds** and the **Insurer** shall submit any dispute or controversy arising out of or relating to this **Policy** or the breach, termination or invalidity thereof to the alternative dispute resolution ("ADR") process set forth in this Section.

Either an **Insured** or the **Insurer** may elect the type of ADR process discussed below; provided, however, that the **Insured** shall have the right to reject the choice by the **Insurer** of the type of ADR process at any time prior to its commencement, in which case the choice by the **Insured** of ADR process shall control.

There shall be two choices of ADR process: (1) non-binding **Mediation** administered by any **Mediation** facility to which the **Insurer** and the **Insured** mutually agree, in which the **Insured** and the **Insurer** shall try in good faith to settle the dispute by **Mediation** in accordance with the then-prevailing commercial **Mediation** rules of the **Mediation** facility; or (2) arbitration submitted to any arbitration facility to which the **Insured** and the **Insurer** mutually agree, in which the arbitration panel shall consist of three disinterested individuals. In either **Mediation** or arbitration, the mediator or arbitrators shall have knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute. In the event of arbitration, the decision of the arbitrators shall be final and binding and provided to both parties, and the award of the arbitrators shall not include attorneys' fees or other costs. In the event of **Mediation**, either party shall have the right to commence a judicial proceeding; provided, however, that no such judicial proceeding shall be commenced until at least 60 days after the date the **Mediation** shall be deemed concluded or terminated. In all events, each party shall share equally the expenses of the ADR process.

Either ADR process may be commenced in New York, New York or in the state indicated in Item 1 of the Declarations as the principal address of the **Named Insured**. The **Named Insured** shall act on behalf of each and every **Insured** in connection with any ADR process under this Section.

XX.   ALLOCATION

    a.    If **Damages**, in part, covered by this **Policy** and, in part, not covered by this **Policy**, are incurred on account of a single **Claim** for which the **Insurer** retains the duty to defend, the **Policy** will pay one hundred percent (100%) of reasonable and necessary **Claims Expenses** incurred in the defense of such **Claims**.

    b.    **Damages**, as well as **Claims Expenses** incurred by the **Insured** on account of any **Claim** for which the **Insurer** does not retain the duty to defend shall be allocated between covered and uncovered loss based on the relative legal and financial exposures of the parties and loss at issue.

© 2014



*Illinois Union*

INSURANCE COMPANY

525 West Monroe Street, Suite 400
Chicago, IL  60661

# NOTICE

| | |
|---|---|
| **POLICY NO.** | EON G23658586 007 |
| **NAME OF INSURED:** | Computer Sciences Corporation |
| **ADDRESS:** | 3170 Fairview Park Drive<br>Falls Church, VA  22042 |

We are pleased to enclose your policy for this account.

Please be advised that by binding this risk with the above referenced Surplus Lines Insurance Company, you agree that as the Surplus Lines Broker responsible for the placement of this insurance policy, it is your obligation to comply with all States Surplus Lines Laws including completion of any declarations/affidavits that must be filed as well as payment of any and all Surplus Lines taxes that must be the remitted to the State(s). We will look to you for indemnification if controlling Surplus Lines Laws are violated by you as the Surplus Lines broker responsible for the placement.

You further confirm that any applicable state requirement concerning a diligent search for coverage by admitted carriers has been fulfilled in accordance with state law.

Thank you for this placement and your regulatory compliance.

Date:  11/01/2014

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**1** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Endorsement Schedule

It is agreed that the following endorsements are attached at effective date of policy.

| **Endorsement Title** | **Endorsement #** |
|---|---|
| 1. Endorsement Schedule | PF-15197 (02/04) |
| 2. Trade or Economic Sanctions Endorsement | ALL-21101 (11/06) |
| 3. Signature Endorsement | LD-5S23j (03/14) |
| 4. Service of Suit Endorsement | SL-34255 (09/11) |
| 5. Notice Amended Endorsement – Email Reporting | PF-33468 (02/11) |
| 6. False Claims Act Exclusion Endorsement | PF-38981 (01/13) |
| 7. Retention Amended Endorsement | MS-3525 (08/11) |
| 8. Retroactive Date Amended Endorsement – Specific Insured | PF-27046c (10/10) |
| 9. Retention Amended Endorsement – EL Services | MS-26181 (11/13) |
| 10. Access to the Data Breach Team Notice to Policyholders | PF-30265 (07/10) |
| 11. Access to eRisk® Hub Notice to Policyholders | PF-25176a (06/10) |
| 12. Virginia Surplus Lines Notice | SL-17907 (04/05) |
| 13. ACE Producer Compensation Practices and Policies | ALL-20887 (10/06) |
| 14. U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") Notice to Policyholders | PF-17914 (02/05) |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured | | | Endorsement Number |
|---|---|---|---|
| **Computer Sciences Corporation** | | | **2** |
| Policy Symbol | Policy Number | Policy Period | Effective Date of Endorsement |
| **EON** | **G23658586 007** | **11/01/2014  to  11/01/2015** | **11/01/2014** |
| Issued By (Name of Insurance Company) | | | |
| **Illinois Union Insurance Company** | | | |

## TRADE OR ECONOMIC SANCTIONS ENDORSEMENT

This insurance does not apply to the extent that trade or economic sanctions or other laws or regulations prohibit us from providing insurance, including, but not limited to, the payment of claims. All other terms and conditions of the policy remain unchanged.

_____
Authorized Agent

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**3** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014 to 11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## SIGNATURE ENDORSEMENT

THE ONLY SIGNATURES APPLICABLE TO THIS POLICY ARE THOSE REPRESENTING THE COMPANY NAMED ON THE FIRST PAGE OF THE DECLARATIONS.

By signing and delivering the policy to you, we state that it is a valid contract.

**ILLINOIS UNION INSURANCE COMPANY** (A stock company)
525 W. Monroe Street, Suite 400, Chicago, Illinois 60661

**WESTCHESTER SURPLUS LINES INSURANCE COMPANY** (A stock company)
Royal Centre Two, 11575 Great Oaks Way, Suite 200, Alpharetta, GA 30022

REBECCA L. COLLINS, Secretary

JOHN J. LUPICA, President

Authorized Representative

LD-5S23j (03/14)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**4** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## SERVICE OF SUIT ENDORSEMENT

Information about service of suits upon the company is given below. Service of process of suits against the company may be made upon the following person, or another person the company may designate:

> Saverio Rocca, Assistant General Counsel
> ACE Group of Insurance Companies
> 436 Walnut Street
> Philadelphia, PA 19106-3703

The person named above is authorized and directed to accept service of process on the company's behalf in any action, suit or proceeding instituted against the company. If the insured requests, the company will give the insured a written promise that a general appearance will be entered on the company's behalf if a suit is brought.

If the insured requests, the company will submit to the jurisdiction of any court of competent jurisdiction. The company will accept the final decision of that court or any Appellate Court in the event of an appeal.  However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.

The law of some jurisdictions of the United States of America requires that the Superintendent, Commissioner or Director of Insurance (or their successor in office) be designated as the company's agent for service of process. In these jurisdictions, the company designates the Director of Insurance as the company's true and lawful attorney upon whom service of process on the company's behalf may be made. The company also authorizes the Director of Insurance to mail process received on the company's behalf to the company person named above.

If the insured is a resident of Canada, the insured may also serve suit upon the company by serving the government official designated by the law of the insured's province.

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS ENDORSEMENT IS ATTACHED OTHER THAN AS ABOVE STATED.

_____
Authorized Representative

SL-34255 (09/11)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured **Computer Sciences Corporation** | | | Endorsement Number **5** |
|---|---|---|---|
| Policy Symbol **EON** | Policy Number **G23658586 007** | Policy Period **11/01/2014  to  11/01/2015** | Effective Date of Endorsement **11/01/2014** |
| Issued By (Name of Insurance Company) **Illinois Union Insurance Company** | | | |

## Notice Amended

It is agreed that the Notice section of the **Policy** is amended by adding the following:

Notwithstanding anything in this section to the contrary, written **Claim** notices may also be transmitted via email to the following address:

ACEClaimsFirstNotice@acegroup.com

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**6** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## False Claims Act Exclusion

It is agreed that Exclusions section of the **Policy** is amended by adding the following additional exclusion:

- alleging, based upon, arising out of, or attributable to, or directly or indirectly resulting from the False Claims Act (31 U.S.C. §§ 3729-3733), or any similar provision of any federal, state, local or foreign law, or any amendments thereto;

All other terms and conditions of this **Policy** remain unchanged.

_____
Authorized Representative

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**7** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## RETENTION AMENDED ENDORSEMENT

It is agreed that solely with respect to coverage afforded to <u>Alliance One</u>, Item 5 of the Declarations is deleted in its entirety and the following is inserted:

| | | |
|---|---|---|
| Item 5. | Retention: | |
| | $ 2,500,000 | each **Claim** for Coverage A (if selected) |
| | $ 2,500,000 | each **Claim** for Coverage B (if selected) |
| | $ 2,500,000 | each **Claim** for Coverage C (if selected) |
| | $ 2,500,000 | each **Claim** for Coverage D (if selected) |
| | NIL | each **Claim** for Coverage E (if selected) |
| | NIL | each **Claim** for Coverage F (if selected) |
| | NIL | each **Claim** for Coverage G (if selected) |

All other terms and conditions of this **Policy** remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**8** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Retroactive Date (Item 10) Amended – Specified Insureds

It is agreed that solely with respect to the **Insured(s)** listed below in this endorsement, Item 10 of the Declarations is deleted in its entirety and the following is inserted for each **Insured** respectively:

1.  With respect to the following **Insureds**:   I-Soft Group Limited

    Item 10. **Retroactive Date**:
    | | | |
    |---|---|---|
    | A. | Technology and **Internet** Errors and Omissions Liability | 01/10/1994 |
    | B. | **Electronic Media Activities** Liability | 01/10/1994 |
    | C. | **Network Security** Liability | 01/10/1994 |
    | D. | Privacy Liability (subject to **Regulatory Proceeding** sublimit) | 01/10/1994 |
    | E. | Data Breach Fund | N/A |
    | F. | **Network Extortion Threat** | N/A |
    | G. | **Miscellaneous Professional Services** Liability | N/A |

2.  With respect to the following **Insureds**:   IBA Spectrum Pty Ltd

    Item 10. **Retroactive Date**:
    | | | |
    |---|---|---|
    | A. | Technology and **Internet** Errors and Omissions Liability | 08/29/2003 |
    | B. | **Electronic Media Activities** Liability | 08/29/2003 |
    | C. | **Network Security** Liability | 08/29/2003 |
    | D. | Privacy Liability (subject to **Regulatory Proceeding** sublimit) | 08/29/2003 |
    | E. | Data Breach Fund | N/A |
    | F. | **Network Extortion Threat** | N/A |
    | G. | **Miscellaneous Professional Services** Liability | N/A |

3.  With respect to the following **Insureds**:   Australian Healthcare Technologies (AHT) activities

    Item 10. **Retroactive Date**:
    | | | |
    |---|---|---|
    | A. | Technology and **Internet** Errors and Omissions Liability | 09/01/2003 |
    | B. | **Electronic Media Activities** Liability | 09/01/2003 |
    | C. | **Network Security** Liability | 09/01/2003 |
    | D. | Privacy Liability (subject to **Regulatory Proceeding** sublimit) | 09/01/2003 |
    | E. | Data Breach Fund | N/A |
    | F. | **Network Extortion Threat** | N/A |
    | G. | **Miscellaneous Professional Services** Liability | N/A |

4.      With respect to the following **Insureds**:   KCS Activities

        Item 10.**Retroactive Date**:
          A.  Technology and **Internet** Errors and Omissions Liability     03/04/2004
          B.  **Electronic Media Activities** Liability     03/04/2004
          C.  **Network Security** Liability     03/04/2004
          D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)     03/04/2004
          E.  Data Breach Fund     N/A
          F.  **Network Extortion Threat**     N/A
          G.  **Miscellaneous Professional Services** Liability     N/A

5.      With respect to the following **Insureds**:   EPI Activities

        Item 10.**Retroactive Date**:
          A.  Technology and **Internet** Errors and Omissions Liability     10/29/2004
          B.  **Electronic Media Activities** Liability     10/29/2004
          C.  **Network Security** Liability     10/29/2004
          D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)     10/29/2004
          E.  Data Breach Fund     N/A
          F.  **Network Extortion Threat**     N/A
          G.  **Miscellaneous Professional Services** Liability     N/A

6.      With respect to the following **Insureds**:   Terranova Pacific Services activities

        Item 10.**Retroactive Date**:
          A.  Technology and **Internet** Errors and Omissions Liability     02/07/2005
          B.  **Electronic Media Activities** Liability     02/07/2005
          C.  **Network Security** Liability     02/07/2005
          D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)     02/07/2005
          E.  Data Breach Fund     N/A
          F.  **Network Extortion Threat**     N/A
          G.  **Miscellaneous Professional Services** Liability     N/A

7.      With respect to the following **Insureds**:   Monet Distribution activities

        Item 10.**Retroactive Date**:
          A.  Technology and **Internet** Errors and Omissions Liability     06/24/2005
          B.  **Electronic Media Activities** Liability     06/24/2005
          C.  **Network Security** Liability     06/24/2005
          D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)     06/24/2005
          E.  Data Breach Fund     N/A
          F.  **Network Extortion Threat**     N/A
          G.  **Miscellaneous Professional Services** Liability     N/A

8.      With respect to the following **Insureds**:   IBA Health (INDIA) Private Ltd.; IBA Health Services (India) Pte
                              Ltd. IBA Health (Middle East)
        Item 10.**Retroactive Date**:
          A.  Technology and **Internet** Errors and Omissions Liability     12/23/2005
          B.  **Electronic Media Activities** Liability     12/23/2005
          C.  **Network Security** Liability     12/23/2005
          D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)     12/23/2005
          E.  Data Breach Fund     N/A
          F.  **Network Extortion Threat**     N/A
          G.  **Miscellaneous Professional Services** Liability     N/A

9.      With respect to the following **Insureds**:   The assets of Monet Technologies Pty Ltd

        Item 10.**Retroactive Date**:
        A.  Technology and **Internet** Errors and Omissions Liability        07/31/2006
        B.  **Electronic Media Activities** Liability                         07/31/2006
        C.  **Network Security** Liability                                    07/31/2006
        D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)  07/31/2006
        E.  Data Breach Fund                                                  N/A
        F.  **Network Extortion Threat**                                      N/A
        G.  **Miscellaneous Professional Services** Liability                 N/A

10.     With respect to the following **Insureds**:   Healthlogic Sdn Bhd and Ying Shen Infocomm Systems Co Ltd

        Item 10.**Retroactive Date**:
        A.  Technology and **Internet** Errors and Omissions Liability        09/08/2006
        B.  **Electronic Media Activities** Liability                         09/08/2006
        C.  **Network Security** Liability                                    09/08/2006
        D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)  09/08/2006
        E.  Data Breach Fund                                                  N/A
        F.  **Network Extortion Threat**                                      N/A
        G.  **Miscellaneous Professional Services** Liability                 N/A

11.     With respect to the following **Insureds**:   I-Soft Activities

        Item 10.**Retroactive Date**:
        A.  Technology and **Internet** Errors and Omissions Liability        01/01/1999
        B.  **Electronic Media Activities** Liability                         01/01/1999
        C.  **Network Security** Liability                                    01/01/1999
        D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)  01/01/1999
        E.  Data Breach Fund                                                  N/A
        F.  **Network Extortion Threat**                                      N/A
        G.  **Miscellaneous Professional Services** Liability                 N/A

12.     With respect to the following **Insureds**:   Maricom Systems, Inc.

        Item 10.**Retroactive Date**:
        A.  Technology and **Internet** Errors and Omissions Liability        08/20/2007
        B.  **Electronic Media Activities** Liability                         08/20/2007
        C.  **Network Security** Liability                                    08/20/2007
        D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)  08/20/2007
        E.  Data Breach Fund                                                  N/A
        F.  **Network Extortion Threat**                                      N/A
        G.  **Miscellaneous Professional Services** Liability                 N/A

13.     With respect to the following **Insureds**:   42Six, LLC

        Item 10.**Retroactive Date**:
        A.  Technology and **Internet** Errors and Omissions Liability        03/20/2011
        B.  **Electronic Media Activities** Liability                         03/20/2011
        C.  **Network Security** Liability                                    03/20/2011
        D.  Privacy Liability (subject to **Regulatory Proceeding** sublimit)  03/20/2011
        E.  Data Breach Fund                                                  N/A
        F.  **Network Extortion Threat**                                      N/A
        G.  **Miscellaneous Professional Services** Liability                 N/A

All other terms and conditions of this **Policy** remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

| Named Insured<br>**Computer Sciences Corporation** | | | Endorsement Number<br>**9** |
|---|---|---|---|
| Policy Symbol<br>**EON** | Policy Number<br>**G23658586 007** | Policy Period<br>**11/01/2014  to  11/01/2015** | Effective Date of Endorsement<br>**11/01/2014** |
| Issued By (Name of Insurance Company)<br>**Illinois Union Insurance Company** | | | |

## Retention Amended – Specific Contracts

It is agreed that solely for **Claims** against the **Named Insured** or any past, present or future principal, partner, officer, director, trustee, or employee thereof, and alleging, based upon, arising out of, or attributable to early intervention services pursuant to all or any part of the contract(s) between the **Named Insured** and its clients specified below, Item 5, Retention, of the Declarations is deleted in its entirety and the following is inserted:

Item 5. Retention:        $ 5,000,000       each **Claim** for Coverages A, B, C and   D

Client Name:

New York City
New Jersey
Missouri
Indiana
West Virginia
Louisiana
Georgia
New Jersey DAS

All other terms and conditions of this **Policy** remain unchanged.

© ACE USA, 2013



# Access to the Data Breach Team
# Notice to Policyholders

This Policyholder Notice shall be construed as part of your policy but no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning access to the **Data Breach Team Panel List**, a list of approved service providers to provide legal, computer forensic, notification, call center, public relations, crisis communications, fraud consultation, credit monitoring, and identity restoration advice and services.

The list of approved service providers is available at the eRisk Hub® website. Please note, you must first register with the eRisk Hub® before you can access the Data Breach Team Panel List. Please refer to the Access to eRisk Hub® Notice to Policyholders for instructions on how to register to the eRisk Hub®. Once registered, you can access the portal by going to www.eriskhub.com/ace.php and completing the User Login.

In the event of a data breach event, a copy of the Data Breach Panel List can also be obtained from the Data Breach Coach, the law firm within the Data Breach Team designated for consultative and pre-litigation services provided to you. In the event of a breach, contact the Data Breach Coach as indicated on the amended Declarations of the Data Breach Endorsement.

**Please note the following:**

1. ACE shall not be a party to any agreement entered into between any Data Breach Team service provider and the policyholder. It is understood that Data Breach Team service providers are independent contractors, and are not agents of ACE. The policyholder agrees that ACE assumes no liability arising out of any services rendered by a Data Breach Team service provider. ACE shall not be entitled to any rights or subject to any obligations or liabilities set forth in any agreement entered into between any Data Breach Team service provider and the policyholder. Any rights and obligations with respect to such agreement, including but limited to billings, fees and services rendered, are solely for the benefit of, and borne solely by such Data Breach Team service provider and the policyholder, and not ACE.

2. ACE has no obligation to provide any of the legal, computer forensic, notification, call center, public relations, crisis communications, fraud consultation, credit monitoring, and identity restoration advice and services provided by the Data Breach Team.

3. The policyholder is under no obligation to contract for services with Data Breach Team service providers, except as amended by the Data Breach Team Endorsement.

4. Solely with respect to policyholder's wishing to execute the terms and conditions provided by the Data Breach Team Endorsement:

   a. Failure to comply with any one or more of the requirements of the endorsement will preclude coverage under the endorsement, and the policy will retain its original terms and conditions as if the Data Breach Team Endorsement had not been attached to the policy.

   b. ACE may, at its sole discretion as evidenced by the ACE's prior written approval, on or before the effective date of the policy, permit the policyholder to retain alternative service providers to provide services comparable to the services offered by the Data Breach Team.

   c. If, during the policy, either (i) any of the Data Breach Team service providers is unable to or does not provide the services covered under Data Breach Expenses or (ii) there is a change of law or regulation that prevents service providers selected exclusively from the Data Breach Team from providing the legal, computer forensic, notification, call center, public relations, crisis communications, fraud consultation, credit monitoring, and identity restoration advice and services sought by the policyholder; ACE may, at its sole discretion as evidenced by the ACE's prior written approval, permit the policyholder to retain alternative service providers to provide services comparable to the services offered by the Data Breach Team.

   Further, the maximum rate ACE will pay for Data Breach Expenses shall be no more than the rates outlined in the ACE Data Breach Team Panel Guidelines for such services.



# Access to eRisk Hub[®]
# Notice to Policyholders

This Policyholder Notice shall be construed as part of your policy but no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning access to the **eRisk Hub**[®], a private web-based loss prevention portal to help policyholders manage cyber risk. Founded and managed by NetDiligence[®], a leading network security and e-risk assessment services company, the eRisk Hub is a private, web-based portal containing information and technical resources that can assist you in the prevention of network and privacy losses and  support you in the timely reporting and recovery if an incident occurs.

The eRisk Hub portal is an internet-based service that features news, content and access to leading practitioners in risk management, computer forensics, forensic accounting, crisis communications, legal counsel, and other highly-specialized segments of cyber risk.

**Please note the following:**

1.  The eRisk Hub portal is private and secure. Do not share portal access instructions with anyone outside your organization. You are responsible for maintaining the confidentiality of the ACE Access Code provided to you.

2.  The eRisk Hub portal is for ACE clients only. Up to three individuals from your organization may register and use the portal. Ideal candidates include your company's Risk Manager, Compliance Manager, Privacy Officer, IT Operations Manager, or Legal Counsel.

3.  The eRisk Hub portal contains a directory of experienced providers of cyber risk management and breach recovery services. ACE does not endorse these companies or their respective services. Before you engage any of these companies, we urge you to conduct your own due diligence to ensure the companies and their services meet your needs. Unless otherwise indicated or approved, payment for services provided by these companies is your responsibility.

4.  Should you experience a data breach event, you may choose to call the Data Breach Coach Hotline listed in the portal for immediate triage assistance. Please be aware that the hotline service is provided by a third-party law firm. If you engage this service, it is billable to you at the standard rate per hour outlined in the ACE Data Breach Team Panel Guidelines. Therefore, calling the hotline does NOT satisfy the claim notification requirements of your policy.

**To register for the eRisk Hub:**

1.  Send an e-mail request to eriskhub@acegroup.com including the following information to obtain a copy of your ACE Access Code to the eRisk Hub:
    a. Your Name (up to three individuals from you organization may register and use the portal)
    b. Your Title
    c. Your Phone Number
    d. Named Insured (Item 1. of your Policy)
    e. Policy Number
    Within four business days you will receive a copy of your ACE Access Code.

2.  Go to www.eriskhub.com/ace.php.

3.  Complete the registration form (this will require your ACE Access Code from Step 1 above).

4.  Once registered, access the portal by going to www.eriskhub.com/ace.php and completing the User Login.

**ACE USA**
☒ **Illinois Union Insurance  Company**
☐ **INA Surplus Insurance Company**
☐ **Westchester Surplus Lines Insurance Company**
☐ _____

Insured: **Computer Sciences Corporation**          Attached To Policy No.:  **EON G23658586 007**

                                                    Effective Date:  **11/01/2014  -  11/01/2015**

---

## VIRGINIA SURPLUS LINES NOTIFICATION
## Form SLB-9

THE INSURANCE POLICY THAT YOU HAVE APPLIED FOR HAS BEEN PLACED WITH OR IS BEING OBTAINED FROM AN INSURER APPROVED BY THE STATE CORPORATION COMMISSION FOR ISSUANCE OF SURPLUS LINES INSURANCE IN THIS COMMONWEALTH, BUT NOT LICENSED OR REGULATED BY THE STATE CORPORATION COMMISSION OF THE COMMONWEALTH OF VIRGINIA. THEREFORE YOU, THE POLICYHOLDER, AND PERSONS FILING A CLAIM AGAINST YOU ARE NOT PROTECTED UNDER THE VIRGINIA PROPERTY AND CASUALTY INSURANCE GUARANTY ASSOCIATION ACT (SECTION 38.2-1600 et seq.) AGAINST DEFAULT OF THE COMPANY DUE TO INSOLVENCY. IN THE EVENT OF INSURANCE COMPANY INSOLVENCY YOU MAY BE UNABLE TO COLLECT ANY AMOUNT OWED TO YOU BY THE COMPANY REGARDLESS OF THE TERMS OF THIS INSURANCE POLICY, AND YOU MAY HAVE TO PAY FOR ANY CLAIMS MADE AGAINST YOU.

_____
(Name of Surplus Lines Broker)

_____
(License Number)

_____
(Broker's Mailing Address)

NOTHING HEREIN CONTAINED SHALL BE HELD TO VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS, CONDITIONS, OR LIMITATIONS OF THE POLICY TO WHICH THIS NOTICE IS ATTACHED OTHER THAN AS STATED ABOVE.

SL-17907  (Ed. 04/05)                                                       Page 1 of 1



**ACE Producer Compensation
Practices & Policies**

ACE believes that policyholders should have access to information about ACE's practices and policies related to the payment of compensation to brokers and independent agents.  You can obtain that information by accessing our website at http://www.aceproducercompensation.com or by calling the following toll-free telephone number: 1-866-512-2862.

ALL-20887 (10/06)



# U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") Advisory Notice to Policyholders

This Policyholder Notice shall not be construed as part of your policy and no coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.