# BARNES & THORNBURG LLP

David E. Wood
Partner
(310) 284-3793
david.wood@btlaw.com

2029 Century Park East, Suite 300
Los Angeles, CA 90067-2904 U.S.A.
Phone (310) 284-3880
Fax (310) 284-3894
www.btlaw.com

August 7, 2020

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 08/21/2020
```

*Via ECF*

Honorable Mary Kay Vyskocil
United States District Court for the Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007

      Re:    *Computer Sciences Corporation v. Endurance Risk Solutions Assurance Co. et al.*, **Case No. 1:20-cv-01580 (MKV) S.D.N.Y. (filed February 21, 2020)**

Dear Judge Vyskocil:

      This firm represents Plaintiff Computer Sciences Corporation ("CSC") in the captioned action.  We respond here to Defendants' letter to this Court of July 30, 2020 (Doc. 44), requesting a pre-motion conference under Rule 4.A.i. of your Individual Rules of Practice to discuss Defendants' anticipated motion to dismiss CSC's Complaint (Doc. 1).

      All insurers beneath the Defendants in the relevant insurance tower – including some of the largest and most sophisticated insurers in the world – have paid their collective $75 million limits toward the underlying arbitration award against CSC (plus the insured's defense costs).  Defendants' policies, like those of the excess insurers beneath them that have paid this claim, adopt the terms of the primary policy.  The term "Damages" is defined broadly to mean "all forms of monetary damages, including . . . compensatory damages . . . .,"[1] excluding a "return of fees."[2]  That exclusion, however, contains a critical exception:  A return of fees is <u>not</u> excluded when a judgment or award against the insured is for "***compensatory amounts equivalent to fees which are used as a measure of otherwise covered Damages*** . . . ."[3]  (Emphasis added.)

      In the underlying arbitration, Kemper Corporate Services, Inc. ("Kemper") alleged that it had engaged CSC to develop a customized software platform that proved to be unusable.  Kemper demanded (among other things) $58,598,963 in "compensatory damages" measured by the amounts it paid the insured for its work.[4]  The arbitrator awarded Kemper these amounts, which he specifically characterized as "compensatory damages," minus an offset equal to royalty payments CSC had made to Kemper.[5]  He did not hold that CSC failed to render these services, requiring it to return unearned compensation.  Rather, he found that CSC had invested hundreds of thousands of hours in trying to develop a program Kemper ultimately was unable to use.

---

[1] Complaint, Ex. A, Policy No. EON G23658586 007, § II.K., emphasis omitted.

[2] *Id*. at § II.K.5., emphasis omitted.

[3] *Id*. at § II.K.5., emphasis omitted.

[4] *Kemper Corporate Services, Inc. v. Computer Sciences Corporation*, Case No. 01-15-005-2283, Final Award, p. 37.

[5] The award of an offset is important:  Because damages, not restitution, are subject to offset.  That the arbitrator awarded an offset shows that what he rendered was an award of compensatory damages, not a refund of fees.

Honorable Mary Kay Vyskocil
August 7, 2020
Page 2

Based on this finding, the arbitrator awarded Kemper all payments it had made to CSC as "one element of Kemper's direct damages" that he specifically held were "compensatory," *i.e.*, not restitution or disgorgement.[6]

The arbitrator awarded Kemper what it asked for: Compensatory damages equivalent to and measured by the payments it made to CSC. *See Black's Law Dictionary*, (11th ed. 2019) (defining "equivalent" as "1. Equal in value, force, amount, effect, or significance. 2. Corresponding in effect or function; nearly equal; virtually identical" and "measure of damages" as "The basis for calculating damages to be awarded to someone who has suffered an injury; the test by which the amount of damages is ascertained"). This part of the award fits squarely into the exception to the return of fees exclusion.

CSC's interpretation of this exception is the only one that is reasonable. Defendants' reading of the primary policy – that any award against CSC based on fees paid it by a customer is excluded – effectively deletes the exception from the exclusion. Similarly, Defendants' reading of the award as an actual return of fees, rather than a compensatory damages award measured by the fees Kemper had paid CSC, mischaracterizes what the award states.

Travelers made the same mistaken argument in *Travelers Prop v. Cas. Co. of Am. v. ServerLogic Corp.*, 2015 WL 920419 (D. Ore. 2015). There, a client sued a software developer for failing to deliver a usable product. The client asked an arbitration panel to award (among other things) a "refund" of fees it had paid the developer as damages for breach of contract and negligence. The panel did so. In coverage litigation, Travelers argued that this award was an actual award of fees, which it claimed was really an award of uninsurable restitution rather than covered damages. The District Court rejected this assertion, finding that the reference in the award to a "refund" "simply refers to [the client's] own ***measure of its damages*** . . . as all money paid to [the developer]" and therefore was "properly characterized as compensatory damages within the meaning of the policy . . ." *Id*. at *6 (emphasis added). This ruling should guide the Court here: The Kemper award simply was not an actual return of fees as Defendants propose.

Defendants argue that because part of the award is an excluded return of fees, any interest on that part of the award is equally excluded. This is wrong. Even if part of the award was an excluded return of fees (which it isn't), the interest thereon would not be subject to allocation. The primary policy defines "Claims Expenses" as including "***prejudgment and post judgment interest*** awarded in any Claim."[7]  (Emphasis added.) It also provides that "[i]f Damages, in part, covered by this Policy and, in part, not covered by this Policy, are incurred on account of a single Claim for which the Insurer retains the duty to defend, ***the Policy will pay one hundred (100%) of reasonable and necessary Claims Expenses*** incurred in the defense of such Claims."[8] (Emphasis added.) Under Defendants' policies, they "retain[ed] the duty to defend" claims against CSC. They also concede that all amounts awarded Kemper, other than the $58,532,652 measured by fees paid to CSC and interest thereon, are "potentially covered." Consequently, all interest on the award is covered.

---

[6] Final Award, pp. 37-39, 50.

[7] Complaint, Ex. A, Policy No. EON G23658586 007, at § II.F., emphasis omitted.

[8] *Id*. at § XX.a., emphasis omitted.

BARNES&THORNBURGLLP

Honorable Mary Kay Vyskocil
August 7, 2020
Page 3

Defendants' contention that no claim for bad faith can be stated here is not correct. These insurers have knowingly repudiated the work of underwriters for the primary carrier and CSC brokers, who fashioned the exception to the exclusion to address losses just like the Kemper award. This was a breach of the implied covenant of good faith and fair dealing. Attempting to justify their conduct, Defendants contend that these insurers had no duty to pay their $75 million shares of the Kemper award, and that some did so *ex gratia*. CSC of course denies this. Yet the fact that similarly-situated insurers paid this claim demonstrates that CSC's Complaint states a claim for bad faith that is, at the very least, "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Moreover, Defendant Homeland Insurance Company of New York's excess policy requires it, in matters regarding claims, to cede control of claims decisions to the primary insurer. Yet it denies coverage without even attempting to explain why it may now disavow the primary insurer's decision to pay this claim. Such conduct is a breach of the implied covenant of good faith and fair dealing.

By their July 30 letter, Defendants outline a motion to dismiss under Fed. R. Civ. Proc. 12 (b)(6) based on CSC's purported failure to state a claim in its Complaint. As you know, the task of the Court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Pub. Offering Sec. Litig.*, 383 F. Supp. 2d 566, 574 (S.D.N.Y. 2005) (internal quotation marks and citation omitted). The Court must accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Chambers v. Time Warner, Inc.*, 282 F.3d 80, 83 (2d Cir. 2000).

That underlying insurers paid this claim allows the Court to draw the very reasonable inferences that (1) Defendants should have paid as well; and (2) they acted in bad faith by failing to do so. CSC's interpretation of the exception to the return of fees exclusion is undoubtedly reasonable. Were the Court to determine that Defendants' interpretation of the exception is also reasonable (which CSC is confident it is not), an ambiguity would exist that must be construed in favor of CSC and against the Defendant insurers. Even if the disputed language were not construed against Defendants, the factual issue of which reasonable interpretation the parties intended would be resolved by a finder of fact at trial – not by the Court on a motion to dismiss.

Under any circumstances, Defendants' motion to dismiss would have to be denied. CSC would welcome a pre-motion conference if the Court believes it would be helpful.

Sincerely,

BARNES & THORNBURG LLP

By _____
DAVID E. WOOD

BARNES&THORNBURG LLP

---

**Defendants' request for a Pre-Motion Conference is DENIED. The Parties may proceed directly to briefing. Defendants' Motion to Dismiss shall be filed on or before September 21, 2020; Plaintiff's Opposition shall be filed on or before October 21, 2020; and Defendants' Reply shall be filed November 4, 2020. SO ORDERED.**

Date: 08/21/2020
New York, New York

Mary Kay Vyskocil
United States District Judge