## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMPUTER SCIENCES CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20-cv-01580 (MKV) |
| | ) | |
| v. | ) | |
| | ) | |
| ENDURANCE RISK SOLUTIONS | ) | |
| ASSURANCE CO., HOMELAND | ) | |
| INSURANCE COMPANY OF NEW YORK, | ) | |
| ASPEN INSURANCE UK LIMITED, | ) | |
| ASPEN INSURANCE LIMITED FOR AND | ) | |
| ON BEHALF OF LLOYD'S UNDERWRITER | ) | |
| SYNDICATE NO. 4711, ASPEN | ) | |
| UNDERWRITING LIMITED FOR AND ON | ) | |
| BEHALF OF LLOYD'S UNDERWRITER | ) | |
| SYNDICATE, ASPEN MANAGING AGENCY | ) | |
| LIMITED FOR AND ON BEHALF OF | ) | |
| LLOYD'S UNDERWRITER SYNDICATION | ) | |
| NO. 4711 and LLOYD'S UNDERWRITER | ) | |
| SYNDICATE NO. 4711, | ) | |
| | ) | |
| Defendants. | ) | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS ...................................................................................................3

    Defendants' Excess Insurance Policies.................................................................3

    The Arbitration Award.........................................................................................6

ARGUMENT ......................................................................................................................9

    A.    Standard ...........................................................................................9

    B.    Choice  of Law...............................................................................9

    C.    CSC's Loss in the Kemper Arbitration  Did Not Include "Damages" that
        Exhausted All Insurance Beneath that Provided by Defendants ...........................10

    D.    CSC's Complaint Fails to Assert a Viable Claim for Alleged Bad Faith Against
        Defendants ......................................................................................15

CONCLUSION....................................................................................................16

# <u>TABLE OF AUTHORITIES</u>

*Cases*

*ACE Capital Ltd. v. Morgan Waldon Ins. Mgt., LLC,*
  832 F.Supp.2d 554 (W.D. Pa. 2011)...................................................................... 14

*Alexander & Alexander Services, Inc. v. Certain Underwriters at Lloyd's,*
  136 F.3d 82 (2d Cir. 1998)...................................................................................... 11

*Allion Healthcare, Inc. v. Arch Ins. Co.,*
  2014 WL 4829463 (E.D.N.Y. 2014)........................................................................ 9

*Allmerica Financial Corp. v. Underwriters at Lloyd's,*
  871 N.E.2d 418 (Mass. 2007) ................................................................................. 14

*Aschcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................................................................... 9

*Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC,*
  162 F.Supp.3d 337 (S.D.N.Y. 2016)....................................................................... 11

*Associated Community Bancorp. v. St. Paul Mercury Ins. Co.,*
  118 A.D.3d 608, 989 N.Y.S.2d 15 (1st Dep't 2014) .............................................. 14

*Breed v. Ins. Co. of North America,*
  46 N.Y.2d 351, 413 N.Y.S.2d 352 (1978) .............................................................. 11

*Catlin Specialty Ins. Co. v. QA3 Financial Corp.,*
  36 F.Supp.3d 336 (S.D.N.Y. 2014)......................................................................... 11

*Catlin Specialty Ins. Co. v. QA3 Financial Corp.,*
  629 Fed. Appx. 127 (2d Cir. 2015) ......................................................................... 15

*CBS Inc. v. Continental Cas. Co.,*
  753 F.Supp. 525 (S.D.N.Y. 1991)........................................................................... 14

*Clopay Plastics Co., Inc. v. Excelsior Packing Group, Inc.,*
  2013 WL 6388444 (S.D.N.Y. 2013)......................................................................... 9

*CUNA Mut. Ins. Soc. v. Norman,*
  375 S.E.2d 724 (Va. 1989)....................................................................................... 15

*Cunninghame v. Equitable Life Assur. Soc.,*
  652 F.2d 306 (2d Cir. 1981)..................................................................................... 10

*Home Ins. Co. v. American Home Products Corp.*,
    902 F.2d 1111 (2d Cir. 1990).................................................................. 10

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
    97 F.3d 632 (2d Cir. 1996)................................................................... 9, 11

*Lend Lease (US) Construction LMB, Inc. v. Zurich American Ins. Co.*,
    136 A.D.2d 52, 22 N.Y.S.3d 24 (1st Dep't 2015) ................................ 12

*Lightfoot v. Union Carbide Corp.*,
    110 F.3d 898 (2d Cir. 1997).................................................................. 11

*Maniolos v. United States*,
    741 F.Supp.2d 555 (S.D.N.Y. 2010)...................................................... 9

*Millennium Partners, LP v. Select Ins. Co.*,
    68 A.D.3d 420, 889 N.Y.S.3d 575 (1st Dep't 2009) ............................ 13

*Morgan Stanley Group, Inc. v. New England Ins. Co.*,
    225 F.3d 270 (2d Cir. 2000)................................................................... 11

*Matter of Reliance Ins. Co.*,
    81 A.D.3d 533, 918 N.Y.S.3d 25 (1st Dep't 2011) .............................. 13

*Redcross v. Aetna Cas. & Sur. Co.*,
    260 A.D.2d 908, 688 N.Y.S.2d 917 (3d Dep't 1999) ........................... 15

*Reliance Group Holdings, Inc. v. National Union Fire Ins. Co.*,
    188 A.D.2d 47, 594 N.Y.S.2d 20 (1st Dep't 1993) .............................. 13

*Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co.*,
    21 N.Y.3d 139, 969 N.Y.S.2d 808 (2013) ............................................ 12

*Roundabout Theatre Co. v. Continental Cas. Co.*,
    302 A.D.2d 1, 751 N.Y.S.2d 4 (3rd Dep't 2002)................................... 12

*Shapiro v. OneBeacon Ins. Co.*,
    34 A.D.3d 259, 824 N.Y.S.2d 46 (1st Dep't 2006) .............................. 12

*U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*,
    2020 WL 2489078 (S.D.N.Y. 2020)....................................................... 9

*Underwriters at Lloyd's v. Lancer & Lovell-Taylor, P.C.*,
    112 A.D.3d 434, 975 N.Y.S.2d 870 (1st Dep't 2013) .......................... 12

*Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*,
    10 A.D.3d 528, 782 N.Y.S.2d 129 (1st Dep't 2004) ............................ 12

iii

*Zurich Ins. Co. v. Texasgulf, Inc.*,
  233 A.D.2d 180, 649 N.Y.S.2d 153 (1st Dep't 1996) ........................................................... 15

**STATUTES**

Federal Rule 12(b)(6) .............................................................................................................1, 9

## PRELIMINARY STATEMENT

Defendants, through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed in the above-captioned action, with prejudice, pursuant to Federal Rule 12(b)(6).

Plaintiff commenced this action by filing a summons and complaint in the United States District Court for the Southern District of New York on February 21, 2020, a copy of which is annexed to the Declaration of Lisa L. Shrewsberry ("Shrewsberry Dec.") as Ex. "A" ("Compl."). Plaintiff Computer Sciences Corporation ("CSC") seeks indemnification under excess policies issued by defendants, as part of an "insurance tower," for an adverse arbitration award rendered against it, and in favor of Kemper Corporate Services, Inc. ("Kemper").  That award included some amounts that might constitute "Damages" under CSC's applicable insurance tower, depending on other coverage limitations. However, a substantial portion of the award was for the return of over $58 million in fees that Kemper paid to CSC, and pre-judgment interest associated with those fees. Multiple grounds support defendants' position that the subject award is not covered, by the subject policies.[1] The instant motion is based on one of these grounds, as it is dispositive of the entire matter.

The return of fees portion of the award, and interest thereon, do not constitute "Damages" covered under the insurance policies. CSC received full indemnification from underlying carriers without reaching the $95 million attachment point of defendants' excess policies. The arbitration award at issue herein determined that CSC breached a contract with Kemper by failing to provide functional software that was vital for the operation of Kemper's business. Pursuant to the express

---

[1] As alleged by plaintiff, for several years preceding the filing of the complaint herein, plaintiff and defendants engaged in correspondence regarding whether the subject excess insurance policies provide indemnification for such arbitration award, copies of which are annexed to the Shrewsberry Dec. as Ex. "B." These letters discuss all of the issues raised by the award against plaintiff in the underlying arbitration.

terms of the underlying contract, the arbitrator determined that Kemper was entitled to recover the fees it had paid to CSC. In addition to the return of fees, Kemper was awarded damages resulting from the breach, including internal salaries associated with the project, hardware costs and other expenses, as well as the costs and expense incurred in the arbitration, and interest, as follows:

$58,532,652 – return of fees
$25,763,929 – salaries, hardware and other costs
$7,176,095.25 – arbitration costs and expenses
$50,227,916 – pre-judgment interest
$3,429,713.27 – post-judgment interest
_____
$145,130,306 – Total.

Compl. ¶¶ 82, 93.  When the return of fees ($58,532,652) and interest thereon (approximately 64% or $35,000,000 of total interest) are subtracted from the award as uncovered loss, the remaining $51,597,694, which arguably represents potentially covered "Damages," is well below the $95 million attachment point of defendants' policies.  As such, defendants, as excess insurers, have no obligation with respect to the award, as a matter of law.

In addition, the complaint fails to assert a legally cognizable claim against defendants for alleged bad faith.  The complaint should, accordingly, be dismissed against defendants in the entirety and with prejudice.

## STATEMENT OF FACTS

### Defendants' Excess Insurance Policies

This action focuses on a claim submitted under excess insurance policies issued to CSC by defendants, which were effective from November 1, 2014 to November 27, 2015, copies of which are annexed to the Shrewsberry Dec. as Ex. "C;" Compl. ¶¶ 28-30. These excess policies provide a combined limit of liability in the aggregate amount of $25 million, excess of $95 million, which is shared by defendants as follows:

> Homeland Insurance Company of New York ("Homeland") Excess Policy Number TPX-0160-14 - $10,000,000;
>
> Aspen Insurance UK Limited, Aspen Insurance Limited for an on Behalf of Lloyd's Underwriting Syndicate No. 4711, Aspen Underwriting Limited for and on Behalf of Lloyd's Underwriter Syndicate, Aspen Managing Agency Limited for and on Behalf of Lloyd's Underwriter Syndication No. 4711 and Lloyd's Underwriter Syndicate No. 4711 (collectively, "Aspen") Policy No. QK1403608 - $10,000,000; and
>
> Endurance Risk Solutions Assurance Co. ("Endurance") Policy No. PRX10004334301 - $5,000,000.

It is undisputed that coverage is only afforded under defendants' excess policies, in accordance with their terms, once the self-insured retention and total limits of liability of all primary and excess policies beneath those issued by defendants, in the total amount of $95 million, have been fully and properly exhausted as a result of payments for covered losses. Compl. ¶16. The underlying retention and policies are described as follows:

> $20,000,000 Self-Insured Retention;
>
> Illinois Union Insurance Company Primary Policy No. EON G23658586 007 Limit of Liability - $10,000,000 excess $20,000,000 Self-Insured Retention;
>
> Beazley Group Excess Policy No. QK1403388

3

> Limit of Liability - $15,000,000 excess
> $10,000,000;
>
> AIG Specialty Insurance Company Excess Policy
> No. 01-803-26-73
> Limit of Liability - $20,000,000 excess
> $25,000,000;
>
> QBE Specialty Insurance Company Excess Policy
> No. QPL-0006012
> Limit of Liability - $10,000,000 excess
> $45,000,000;
>
> Ironshore Specialty Insurance Company Excess Policy
> No. 000797505
> Limit of Liability - $10,000,000 part of $20,000,000
> excess $55,000,000; and
>
> General Security Indemnity Company of Arizona
> Excess Policy No. 201410F14907-1
> Limit of Liability - $10,000,000 part of $20,000,000
> Excess $55,000,000.

Compl. ¶¶ 19-26.

Defendants' excess policies incorporate the non-conflicting terms, provisions and exclusions of the underlying policies, including, but not limited to, the primary policy issued by Illinois Union Insurance Company. Compl., Ex. B, Section II. The Insuring Agreements of the primary policy provide, in relevant part, as follows:

> A.     Technology and **Internet** Errors and Omissions Liability
>
> If Insuring Agreement A, Technology and Internet Errors and Omissions Liability coverage, is purchased pursuant to Item 3 of the Declarations, the **Insurer** will pay **Damages** and **Claims Expenses** of the **Insured** which the **Insured** becomes legally obligated to pay by reason of a **Claim** first made against the **Insured** during the **Policy Period** and reported to the **Insurer** pursuant to Section VIII, Notice, for any **Wrongful Acts** taking place after the **Retroactive Date** and prior to the end of the **Policy Period**.

Compl., Ex. A, Section I. The primary policy defines the term "Damages" as follows:

4

**Damages** means all forms of monetary damages, including actual damages, statutory damages, punitive, exemplary and multiple damages (where insurable), compensatory damages, funds paid into a Consumer Redress Fund, any award of prejudgment or post-judgment interest, and settlements which the **Insured** becomes legally obligated to pay on account of any **Claim** first made against any **Insured** during the **Policy Period** or, if elected the **Extended Reporting Period**, for **Wrongful Acts** to which this **Policy** applies.

**Damages** shall not include:

1.     any amount for which the **Insured** is not financially liable or legally obligated to pay;

2.     taxes, fines, penalties or sanctions imposed against an **Insured**;

3.     matters uninsurable under the laws pursuant to which this **Policy** is construed;

4.     the cost to comply with any injunctive or other non-monetary relief, including specific performance, or any agreement to provide such relief;

5.     loss of fees or profits by the **Insured**, the return of fees, commissions or royalties by the **Insured** or re-performance of services by the **Insured** or under the **Insured's** supervision; however, compensatory amounts equivalent to fees which are used as a measure of otherwise covered **Damages** shall not trigger this exclusion;

6.     disgorgement of any profit, remuneration or financial advantage to which any **Insured** was not legally entitled;

7.     penalties of any nature, however denominated, arising by contract;

8.     liquidated damages; and

9.     any amounts other than those intended solely to compensate for a loss caused by a **Wrongful Act**.

Compl., Ex. A, Section II.K. Exclusion J contained in the primary policy states as follows:

The **Insurer** shall not be liable for **Damages** or **Claim Expenses** on account of any **Claim**:

\* \* \*

5

> J.      alleging, based upon, arising out of or attributable to any fees,
> expenses or costs paid to or charged by the **Insured**.

Compl., Ex. A, Section III.J.

### **The Arbitration Award**

CSC seeks indemnification under defendants' excess policies for an adverse award against it rendered in an arbitration commenced by Kemper on or about October 19, 2015. Compl. ¶ 75. The final award was issued in the arbitration on or about November 15, 2017, a copy of which is annexed to the Shrewsberry Dec. as Ex. "D" ("Award").

The arbitration arose from a "Master Software License and Service Agreement" ("the Agreement") that was entered into by CSC and Kemper in 2009. *See* Award, p. 6.  The Agreement required CSC to develop a software platform to be used by Kemper to administer its property and casualty insurance business. The Agreement also provided that Kemper would license the "Exceed Suite" software program, which CSC would convert from COBOL to Java, in order to create a new program known as "Exceed J." *Id.*, pp. 8-11. Kemper alleged that despite paying significant fees to CSC and incurring internal costs, CSC did not deliver the software platform for which the parties had contracted, as the Exceed J program only advanced to the initial test deployment stage, wherein it failed to function as expected. *Id.*, p. 12. Kemper, accordingly, asserted claims against CSC for breach of contract and rescission. In doing so, Kemper sought the return of all fees paid to CSC associated with the project under the Agreement, and other damages flowing from the alleged breach of it, including the recovery of internal spending on the failed software platform, expenses paid to third parties, attorney's fees and costs.  *Id.*, pp. 12-15.

In issuing the Award, the arbitrator held that CSC failed to make a Java version of the Exceed software available to Kemper, in violation of the Agreement. *Id.*, pp. 19-28. According to

the arbitrator, the software ultimately provided to Kemper was malformed, unreadable and, as such, was not a true Java version that could be relied upon by Kemper, which bore no responsibility for its inadequacies. *Id.*, p. 29. Because the Agreement provided that it was the sole responsibility of CSC to undertake the conversion and provision of a workable software platform, the arbitrator held that CSC was liable for breach of contract.

With respect to damages flowing from CSC's breach, the Agreement provided as follows:

> Notwithstanding the foregoing, if for reasons not caused by Customer, CSC fails to make the Java version of the Licensed Program generally available to its licensees within twenty-four (24) months . . . , Customer may declare CSC in breach of the Agreements and will be entitled to all remedies set forth in this Addendum (*including, without limitation, all payments made by Customer pursuant to the Agreements* but without any limitations based upon when such payments were made) <u>*and* to seek all additional proven direct damages resulting from the breach</u>.

*Id.*, p. 14 (emphasis added). The arbitrator rejected all of CSC's arguments that the Agreement should in any way limit Kemper's ability to recover the amount of fees it paid to CSC for development of software that was not provided in a functional manner, and held that Kemper could recover all such payments. *Id.*, p. 38. Based on the evidence presented, the arbitrator determined that "Kemper is entitled to recover its payments to CSC ($58,598,963), less $66,311," which latter sum reflects the value of certain royalties paid to the claimant. *Id.* Kemper was also awarded "all additional proven direct damages resulting from the breach," including $22,228,998 for internal salaries associated with the project, $97,942 for hardware costs, $3,436,989 for other expenses, and $7,176,095.25 for costs and expense incurred in the arbitration and pre-judgment interest. *Id.*, p. 50.[2] Of the total amount awarded of $145,130,306, the return of fees to Kemper from CSC constituted $58,532,652 and $35,000,000 in interest on such fees. Accordingly, potentially

---

[2] CSC alleges that prejudgment interest that accrued on the award was $50,277,916, and post judgment interest amounted to $3,429,713.27. Compl. ¶ 93.

covered "Damages" only amounted to $51,597,694, which is well below the attachment point of $95 million.

After the Award was issued, CSC embarked on efforts to vacate the award through litigation commenced in the United States District Court for the Northern District of Texas. Compl. ¶ 84.  These efforts were unsuccessful, and CSC filed an appeal with the United States Court of Appeals for the Fifth Circuit.  That court denied the appeal, in or about January 2020, and upheld the lower court's decision in its entirety. *Id.*, ¶ 86.

In correspondence to defendants, CSC has demanded payment of the entire combined $25 million limits of liability under the subject excess policies for the amount of the Award that exceeds $95 million.  Shrewsberry Dec., Ex. "B," pp. 1-5.   Defendants have consistently explained that the return of fees is not covered, and that the excess policies' attachment point has not been reached.  *Id.*, pp. 6-9.  Plaintiff has not accepted this correct conclusion, and last reiterated its demand to defendants after the Fifth Circuit appeal was denied.  *Id.*, pp. 12-14.  When such demand was correctly refuted by defendants, the instant action was commenced.  Compl. ¶¶ 20-25.

## ARGUMENT

### A.    Standard

Under Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Allion Healthcare, Inc. v. Arch Ins. Co.*, 2014 WL 4829463, *2 (E.D.N.Y. 2014); *see also U.S. Specialty Ins. Co. v. Nationwide Mut. Ins. Co.*, 2020 WL 2489078, *2 (S.D.N.Y. 2020). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements are not entitled to the assumption of truth." *Allion*, 2014 WL 4829463 at *2 *citing Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint asserts a legally cognizable cause of action, "a court may consider any written instrument attached as an exhibit, materials incorporated by reference and documents that, although not incorporated by reference, are integral to the complaint." *Maniolos v. United States*, 741 F.Supp.2d 555, 560 (S.D.N.Y. 2010); *Clopay Plastics Co., Inc. v. Excelsior Packing Group, Inc.*, 2013 WL 6388444, *2 (S.D.N.Y. 2013).

Moreover, "the initial interpretation of a contract, is a matter of law for the court to decide," which can often be accomplished by way of a motion to dismiss a complaint. *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996).

### B.    Choice of Law

The law of New York applies to this matter. The policy issued by defendant Aspen states as follows: "any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this policy is understood and agree by both the insured and insurers to be subject to the law of New York." Shrewsberry Dec., Ex. "C," pp. 8-9. Moreover, as noted above, the excess policies issued by Homeland, Aspen and Endurance incorporate the non-conflicting terms of the primary and all underlying policies. Compl., Ex. B, Section II. Like the Aspen policy,

the policy issued to CSC by Beazley Group, which is beneath those issued by defendants, a copy of which is annexed to the Shrewsberry Dec. as Ex. "E," states that "any dispute concerning the interpretation of the terms, conditions, limitations and/or exclusions contained in this policy is understood and agree by both the insured and insurers to be subject to the law of New York."

The courts have held that choice of law provisions, such as those contained in or incorporated by reference in defendants' policies must be given full force and effect. Therefore, the law of the jurisdiction designated in an insurance policy must control the interpretation of is terms and provisions. *Cunninghame v. Equitable Life Assur. Soc.*, 652 F.2d 306, 309 n.1 (2d Cir. 1981). Accordingly, the law of New York should be applied to all issues presented by the instant action.

**C.    CSC's Loss in the Kemper Arbitration Did Not Include "Damages" that Exhausted All Insurance Beneath that Provided by Defendants.**

CSC admits in its complaint that the Homeland, Aspen and Endurance policies require the exhaustion of the self-insured retention and all underlying primary and excess insurance by payment of "Damages." Compl. ¶ 35; *see, e.g., Home Ins. Co. v. American Home Products Corp.*, 902 F.2d 1111, 1113 (2d Cir. 1990).  CSC's complaint, however, wrongly asserts that all of the amounts awarded by the arbitrator in the Award constitute "Damages," within the clear and unambiguous meaning of the policy. The approximate $59 million in fees that CSC was required to return to Kemper does not constitute covered "Damages."  When such  uncovered amount of the loss is subtracted from the Award (as well as interest associated with same), any potentially covered "Damages" incurred in the arbitration are less than the $95 million that must be exhausted before defendants owe any obligation to the insured in connection with the Award.

In a misguided attempt to raise issues of fact where none exist, CSC's complaint alleges that defendants failed to consider the intent of the insured, primary insurer and other parties in

10

taking the position that the return of fees to Kemper is not covered by the policies.  These allegations, however, ignore well-established precedent that extrinsic evidence of intent may be considered only after a court determines that a policy is ambiguous in the first instance. *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000); *Aspen Specialty Ins. Co. v. 4 NYP Ventures LLC*, 162 F.Supp.3d 337, 341-42 (S.D.N.Y. 2016).  A court is charged with first interpreting an insurance contract as a matter of law. *Morgan Stanley*, 225 F.3d at 275 *citing K. Bell*, 97 F.3d at 637. Only in the event an ambiguity is found, may "the court . . .accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the policy." *Alexander & Alexander Services, Inc. v. Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998).  If extrinsic evidence does not result in an understanding of the parties' intent, then other rules of construction may be employed to ascertain the definitive meaning of a policy. *Catlin Specialty Ins. Co. v. QA3 Financial Corp.*, 36 F.Supp.3d 336, 342 (S.D.N.Y. 2014).

To be clear, extrinsic evidence has no place in this action because the intent of the parties can be ascertained by the unambiguous policies themselves, as a matter of law.  An ambiguity may exist "where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement." *Morgan Stanley*, 225 F.3d at 275 *citing Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997). In assessing whether an insurance contract is clear (in which case it must be applied as written) or ambiguous (which allows consideration of extrinsic evidence and rules of construction), a policy must "be interpreted so as to give effect to the intentions of the parties as expressed in the unequivocal language employed." *Breed v. Ins. Co. of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352 (1978). A policy must also be construed "in a way that

affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Roman Catholic Diocese of Brooklyn v. National Union Fire Ins. Co.*, 21 N.Y.3d 139, 141, 969 N.Y.S.2d 808 (2013).  Parties cannot "disregard clear provisions which the insurers inserted in the policies and the insured accepted, and equitable considerations will not allow an extension of coverage beyond its fair intent and meaning." *Lend Lease (US) Construction LMB, Inc. v. Zurich American Ins. Co.*, 136 A.D.2d 52, 22 N.Y.S.3d 24, 28 (1st Dep't 2015); *Roundabout Theatre Co. v. Continental Cas. Co.*, 302 A.D.2d 1, 751 N.Y.S.2d 4, 8 (3rd Dep't 2002) ("Where the provisions of a policy are clear and unambiguous, they must be given their plain and ordinary meaning, and courts should refrain from writing the agreement.").

The definition of "Damages" incorporated in defendants' policies is in no way ambiguous. The definition simply and clearly provides that Damages do not include "loss of fees or profits by the Insured, the return of fees, commissions or royalties by the Insured or re-performance of services by the Insured or under the Insured's supervision," except "compensatory amounts equivalent to fees which are used as a measure of otherwise covered Damages."  Compl., Ex. A, Section II.K.  Likewise, the policies exclude "Damages or Claim Expenses on account of a Claim "alleging, based upon, arising out of or attributable to any fees, expenses or costs paid to or charged by the Insured." *Id.*, Section III.J.

The courts have held that such limitations in liability policies, which negate coverage for the return or loss of fees, are enforceable and underscore that an insured's risk of having to relinquish its compensation is uninsurable as a matter of law and public policy.  *See, e.g., Underwriters at Lloyd's v. Lancer & Lovell-Taylor, P.C.*, 112 A.D.3d 434, 975 N.Y.S.2d 870, 873 (1st Dep't 2013); *Vigilant Ins. Co. v. Credit Suisse First Boston Corp.*, 10 A.D.3d 528, 782 N.Y.S.2d 129, 132 (1st Dep't 2004); *Shapiro v. OneBeacon Ins. Co.*, 34 A.D.3d 259, 824 N.Y.S.2d

46, 48 (1st Dep't 2006). This holding applies regardless of whether an insured is ordered to disgorge compensation because of breach of contract, professional negligence or intentional misconduct.  For example, in *Matter of Reliance Ins. Co.*, 81 A.D.3d 533, 918 N.Y.S.3d 25 (1st Dep't 2011), an insured sought coverage under a liability policy for a set off of approximately $1.3 million from a *quantum meruit* fee award because of defective work.  The definition of "damages" contained in the policy at issue excepted "the return of fees or charges for services rendered." 918 N.Y.S.2d at 26.  The court held that the policy "unequivocally excluded" the insureds' fees that were lost because of its defective work.  Moreover, the court held that "it is well established that such an offset is uninsurable as a matter of law." "New York law is clear that the refund of monies to which a party is not entitled is not an insurable loss." *Id. citing Millennium Partners, LP v. Select Ins. Co.*, 68 A.D.3d 420, 889 N.Y.S.3d 575, 580 (1st Dep't 2009); *Reliance Group Holdings, Inc. v. National Union Fire Ins. Co.*, 188 A.D.2d 47, 594 N.Y.S.2d 20, 23 (1st Dep't 1993).

As in *Matter of Reliance*, CSC lost its right to fees as a result of the Award rendered in the *Kemper* arbitration.  The portion of the Award that required CSC to return fees paid by Kemper was not for "compensatory amounts equivalent to fees which are used as a measure of otherwise covered Damages."  Instead, the Award resulted in the return of fees *in and of itself*. Award, p. 38 ("Kemper is entitled to recover its payments to CSC. .. ."). The return of fees could not have been "used as a measure of otherwise covered Damages" because the Agreement makes it clear that, in *addition* to the return of fees, Kemper was *also* entitled to "all additional proven direct damages resulting from the breach." Award, p. 37. Indeed, beyond the return of fees, the Award gave Kemper "additional direct damages resulting from the breach," such as salaries paid to its employees and hardware costs. *Id.*, p. 50.  Such amount of that loss incurred by CSC may constitute covered "Damages," but does not reach the excess insurance level of the defendants' policies.

CSC's complaint asserts that defendants' position on the lack of coverage for the return of fees awarded to Kemper is undercut because the other insurers which issued policies beneath those of Homeland, Aspen and Endurance agreed to pay their limits of liability.  The decision of the other insurers, however, may have been because potentially covered Damages presented by the award were within the primary and lower excess layers of their policies.  Regardless, even excess policies that "follow the form" of other policies are separate and distinct contracts of insurance. *CBS Inc. v. Continental Cas. Co.*, 753 F.Supp. 525, 528 (S.D.N.Y. 1991).  As such, the decision of one insurer which issued either a primary or excess policy to the same insured, cannot bind another excess insurer.  *Id.*; *see also Allmerica Financial Corp. v. Underwriters at Lloyd's*, 871 N.E.2d 418, 425 (Mass. 2007) ("[A]n insurer is not bound by the settlement another insurer makes for the same claim, even if the language of the nonsettling party follows the form of the settling party.").  The decisions made by CSC's other insurers are, therefore, irrelevant as to those of defendants.[3]

CSC's complaint also accuses defendants of advocating for a position that would result in illusory coverage.  This allegation is wholly without merit because the policies, on their face, provide coverage for a variety of claims and resulting losses, with the exception, in relevant part, of those resulting in the insured's loss of fees.  As the courts have explicitly held, "an insurance policy is not illusory if it provides coverage for some acts; it is not illusory simple because of a potentially wide exclusion." *Associated Community Bancorp. v. St. Paul Mercury Ins. Co.*, 118 A.D.3d 608, 989 N.Y.S.2d 15, 18 (1st Dep't 2014), *citing ACE Capital Ltd. v. Morgan Waldon*

---

[3] CSC's complaint alleges that Homeland's excess policy binds that defendant to the decisions made by the primary insurer.  This allegation is incorrect.  The Homeland policy actually states as follows: "In matters regarding claims, the Company will act exclusively through the representative(s) designated by the Insurer of the Primary Policy, "*but will act on their own behalf with respect to the settlement of claims.*" Compl., Ex. B, p. 2 (emphasis added). As clearly stated in the relevant excess policy, Homeland acted on its own behalf with respect to positions taken on settlement of the arbitration.

*Ins. Mgt., LLC*, 832 F.Supp.2d 554, 572 (W.D. Pa. 2011).  Defendants' policies simply do not provide coverage for the loss of fees sustained by CSC in the *Kemper* arbitration, which in no way results in illusory coverage thereunder.

**D.     CSC's Complaint Fails to Assert a Viable Claim for Alleged Bad Faith Against Defendants**

CSC's complaint asserts a count against defendants styled "Breach of Implied Covenant of Good Faith and Fair Dealing."  This count asserts, without merit for the reasons discussed herein, that defendants' position regarding the award in the *Kemper* arbitration was "arbitrary, unreasonable and/or dishonest."

The courts have held that such a claim for alleged bad faith "cannot be established when the insurer has an arguable basis for denying coverage." *Catlin Specialty Ins. Co. v. QA3 Financial Corp.*, 629 Fed. Appx. 127, 131 (2d Cir. 2015) *citing Redcross v. Aetna Cas. & Sur. Co.*, 260 A.D.2d 908, 913, 688 N.Y.S.2d 917 (3d Dep't 1999); *Zurich Ins. Co. v. Texasgulf, Inc.*, 233 A.D.2d 180, 181, 649 N.Y.S.2d 153 (1st Dep't 1996); *see also CUNA Mut. Ins. Soc. v. Norman*, 375 S.E.2d 724, 727 (Va. 1989).  Here, defendants' position that the portion of the Award in the *Kemper* arbitration constituting the return of fees does not represent covered "Damages" is correct based on the law and facts.  Therefore, the complaint fails to assert a legally viable claim against Homeland, Aspen and Endurance for alleged bad faith.

## CONCLUSION

For the reasons stated above, defendants respectfully request that the Court enter an order

dismissing plaintiff's complaint with prejudice and granting such other relief as may be deemed

just and appropriate.

Dated: Hawthorne, New York
       September 21, 2020

TRAUB LIEBERMAN STRAUS & SHREWSBERRY LLP

By: *Lisa L. Shrewsberry*
    Lisa L. Shrewsberry (LS 1597)
    Richard J. Rogers (RR 6964)
    *Attorneys for Defendants*
    Mid-Westchester Executive Park
    Seven Skyline Drive
    Hawthorne, New York 10532
    (914) 347-2600