USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/29/2021

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMPUTER SCIENCES CORPORATION,<br><br>Plaintiff,<br><br>-against-<br><br>ENDURANCE RISK SOLUTIONS ASSURANCE CO., HOMELAND INSURANCE COMPANY OF NEW YORK, ASPEN INSURANCE UK LIMITED, ASPEN INSURANCE LIMITED FOR AND ON BEHALF OF LLOYD'S UNDERWRITER SYNDICATE NO. 4711, ASPEN UNDERWRITER LIMITED FOR AND ON BEHALF OF LLOYD'S UNDERWRITER SYNDICATE, ASPEN MANAGING AGENCY LIMITED FOR AND ON BEHALF OF LLOYD'S UNDERWRITER SYNDICATION NO. 4711, and LLOYD'S UNDERWRITER SYNDICATE NO. 4711,<br><br>Defendants. | 1:20-cv-01580-MKV<br><br>MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS |

MARY KAY VYSKOCIL, United States District Judge:

This matter is before the Court on the motion of Defendant insurers Endurance Risk Solutions Assurance Co. ("Endurance"), Homeland Insurance Company of New York ("Homeland"), and Aspen Insurance UK Limited ("Aspen"), collectively ("Defendant Insurers" or "Defendants") to dismiss Plaintiff, Computer Science Corp's, ("CSC's" of "Plaintiff's") Complaint. (Defendants' Motion to Dismiss [ECF No. 49]). Plaintiff filed this Complaint on February 21, 2020 and asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing against all Defendants. (Complaint ("Compl.") [ECF No. 1]). This Court has jurisdiction under 28 U.S.C. § 1332. For the reasons discussed below, Defendant's motion is DENIED.

1

## BACKGROUND

In 2009, CSC and Kemper Corporate Services, Inc. ("Kemper") entered into a Master Services Agreement to develop a new technological product called Exceed J which was a conversion from Exceed to COBOL to then Java. (Compl. ¶ 74). After a delay of CSC creating a functioning Exceed J product, Kemper filed a Demand for Arbitration for a breach of contract from CSC in 2015. (Compl. ¶ 75). Kemper's main claim was that CSC's lack of development of Exceed J, made the contract unfulfilled. (Compl. ¶ 76). After a ten-day arbitration in 2017, the Arbitrator determined that CSC had breached its contract with Kemper, did not develop Exceed J properly, and awarded Kemper damages in the total amount of $84,296,581. (Compl. ¶ 82; Final Award [ECF No. 56-1], at 37, 50).

The arbitrator specifically awarded compensatory and direct damages to Kemper for the entire award. (Compl. ¶ 82; Final Award at 37, 50). The breakdown of the arbitration award is as follows:

> (a) compensatory, direct damages equivalent to and measured by the amounts paid by Kemper to CSC ($58,532,652); (b) additional direct damages for Kemper's internal salaries, costs, and expenses ($25,763,929); (c) pre-judgment interest at the statutory rate of 9% per annum starting January 3, 2011 ($50,227,916); (d) post-judgment interest at the applicable federal rate ($3,429,713.27);9 and (e) Kemper's attorneys' fees, costs and expenses in prosecuting the Action ($7,176,095.23).

(Compl. ¶ 93; Final Award at 38–41, 50). The Award specifically states that the $58,532,652 amount is awarded "as damages" and that the entirety of the $84,362,892 that Kemper requested, was requested in the form of "compensatory damages." (Final Award at 37–38]. The Award was confirmed in 2017 by the Northern District of Texas and affirmed by the Fifth Circuit in 2020. (Compl. ¶¶ 84–86).

After the award was confirmed, CSC then began trying to activate its extensive insurance policies to cover the Award. (Compl. ¶ 86). Plaintiffs purchased a primary policy from Illinois

Union Insurance Company commonly referred to in their complaint as the "Ace Policy." (Compl. ¶ 19). CSC had an additional five layers to the insurance tower and these additional layers were to "follow form" to the Ace Policy. (Compl. ¶ 20). Plaintiffs note that in each of the other four-layer insurance policies they "interpret[ed] the same Ace Policy" that Defendants had in their insurance agreement. (Compl. ¶ 98). While each of the other layers provided the full amount of coverage, CSC was told by Defendants that their insurance policies did not cover the entire Award, and would thus, not be paying their $25 million collectively. (Compl. ¶¶ 95 – 103).

The fifth layer of Plaintiff's insurance policy of the 2014-2015 policy was comprised of policies from Endurance, Homeland and Aspen. (Compl. ¶¶ 27-31). Defendants' liability coverage is as follows: Endurance provided $5 million, Homeland $10 million, and Aspen $10 million. (Compl. ¶¶ 27-31). Each of Defendants' insurance policies followed form to the primary Ace Policy. (Compl. ¶¶ 28-30). The policies, attached to Plaintiff's complaint as exhibits B-D, explicitly say that they "followed form" or followed the "Primary Policy." (Compl. Ex. B at 3, Ex. C at 2, Ex. D at 6). The damages definition of the Ace Policy states:

> Damages means all forms of monetary damages, including actual damages, statutory damages, punitive, exemplary, and multiple damages (where insurable), compensatory damages, funds paid into a Consumer Redress Fund, any award of prejudgment or post-judgment interest, and settlements which the Insured becomes legally obligated to pay on account of any Claim first made against any Insured during the Policy Period or, if elected, the Extended Reporting Period, for Wrongful Acts to which this Policy applies.

(Compl. Ex. A at 6). However, the Ace Policy contains the following exclusion for:

> [L]oss of fees or profits by the Insured, the return of fees, commissions or royalties by the Insured or re-performance of services by the Insured or under the Insured's supervision; however, compensatory amounts equivalent to fees which are used as a measure of otherwise covered Damages shall not trigger this exclusion.

3

(Compl. Ex. A at 7).

Defendants argued that a portion of the Award fell into this exclusion. In Defendants' correspondence to Plaintiff, they repeatedly asserted that the type of damages awarded by the Arbitrator were not entirely covered by the insurance policy, despite Plaintiff's original understanding and interpretation of the insurance coverage. (Compl. ¶¶ 95–103).

The parties have attempted to remedy this situation since November 3, 2017. (Compl. ¶ 95). This correspondence continued for a year through December 2018, with no resolution. (Compl. ¶¶ 95-103). At no point did Defendants state to Plaintiff that they would investigate their claims, but maintained their position and re-affirmed that that they would deny coverage for the Kemper claim. (Compl. ¶ 103).

## **LEGAL STANDARDS**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alterations, internal quotation marks, and citations omitted).

In ruling on a motion to dismiss, the Court must "accept as true all factual allegations and draw from them all reasonable inferences; but [it is] not required to credit conclusory allegations

4

or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014)). The Court's role at this stage is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 713 (S.D.N.Y. 2012) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985)).

## ANALYSIS

### I. Choice of Law

Federal courts in diversity cases "appl[y] the choice of law rules of the forum state." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (collecting cases). The New York Court of Appeals has held that parties' decision to include a New York choice-of-law clause in a contract "obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives, unless the parties expressly indicate otherwise." *Minsters & Missionaries Ben. Bd. v. Snow*, 26 N.Y.3d 466, 468, 25 N.Y.S.3d 21, 45 N.E.3d 917 (N.Y. 2015); *see also IRB–Brasil Resseguros, S.A. v. Inepar Invs., S.A.*, 20 N.Y.3d 310, 312, 958 N.Y.S.2d 689, 982 N.E.2d 609 (N.Y. 2012) ("[T]he need for a conflict-of-laws analysis is obviated by the terms of the parties' agreement."). Accordingly, "when parties include a choice-of-law provision in a contract, . . . the chosen state's substantive law—but not its common-law conflict-of-laws principles or statutory choice-of-law directives—is to be applied." *Minsters*, 26 N.Y.3d at 476.

Here, the policies issued by Defendants Homeland and Endurance do not contain choice-of-law provisions. (*See* Compl. Exs. B–C.) The policy issued by Defendant Aspen, however, contains a New York choice-of-law provision. (*See* Compl. Ex. D.) Plaintiff nevertheless urges the Court to apply New York choice-of-law rules and apply Virginia law because Virginia has

the most significant contacts with this matter.  (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (Pl. Opp'n) [ECF No. 55], at 11).  New York substantive law applies to the Aspen policy given the choice-of-law provision.  Applying New York's choice-of-law rules, as Plaintiff urges, "would contravene the primary purpose of including a choice-of-law provision in a contract—namely, to avoid a conflict-of-laws analysis"—and "interfere with, and ignore, [Plaintiff and Aspen's] intent, contrary to the basic tenets of contract interpretation."  *Minsters*, 26 N.Y.3d at 475; *see also Willis Re Inc. v. Herriott*, ___ F. Supp. 3d ____, 2021 WL 3204764, at *15 (S.D.N.Y. July 22, 2021) (noting that "[t]he language of *Ministers* is unequivocal and brooks no exceptions" (collecting cases)).

The question then becomes whether *Ministers* and the choice-of-law provision in the Aspen policy extend so far as to apply New York law to each of the Fifth Layer policies—*i.e.*, the Homeland and Endurance policies.  The Court should avoid applying the law of two different states in interpreting the Ace policy—New York law for the Aspen policy and Virginia law for the Homeland and Endurance policies.  *Cf. Fireman's Fund Ins. Co. v. Great American Ins. Co. of N.Y.*, 822 F.3d 620, 643 (2d Cir. 2016) ("Under New York law, 'barring extraordinary circumstances, only one state's law should govern an insurance agreement.'" (quoting *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 153 (2d Cir. 2003))).  Doing so could lead to conflicting outcomes: as Plaintiff notes, Virginia and New York law differ with respect to use of extrinsic evidence in interpreting ambiguous insurance contracts and whether an insured can recover attorneys' fees in connection with a bad faith breach of contract claim.  (Pl. Opp'n 10–12.)

The Court, however, may be able to avoid resolving this issue at this juncture.  The parties seem to agree that there is no conflict between New York and Virginia law on the threshold question of whether an insurance contract is ambiguous.  (Defendants' Reply in

Support of Motion to Dismiss (Def. Reply) [ECF No. 57], at 3). "In the absence of substantive difference [between laws of competing jurisdictions], a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143–44 (2d Cir. 2004) (citing *J. Aron & Co. v. Chown*, 231 A.D.2d 426, 647 N.Y.S.2d 8 (N.Y. App. Div. 1996); *Tronlone v. Lac d'Amiante Du Quebec*, 297 A.D.2d 528, 528, 747 N.Y.S.2d 79 (N.Y. App. Div. 2002)).

## II. Plaintiff Sufficiently Alleges A Breach Of Contract Claim

Defendants assert that Plaintiff insufficiently pleads a breach of contract claim because the $59 million in fees that CSC was required to return to Kemper does not constitute covered "Damages." (Defendants' Memorandum of Law in Support of Motion to Dismiss (Def. Mot.) [ECF No. 51], at 10). Defendants assert that because the main portion of the Award was described by the arbitrator as "Kemper is entitled to recover its payments to CSC ($58,598,963)" this portion of the award does not trigger the exclusion because it is a "return of fees." (Def. Mot. 7).

"To plead breach of contract, a plaintiff must allege the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Second Source Funding, LLC v. Yellowstone Capital*, 40 N.Y.S.3d 410, 445–446 (N.Y. App. Div. 2016). "A written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569, 780 N.E.2d 166 (N.Y. 2002). "A contract is unambiguous if the language it uses has 'a definite and precise meaning, unattended by danger of misconception in the purport

of the [agreement] itself and concerning which there is no reasonable basis for a difference of opinion.'" *Id.*

Further, "[d]amages for breach of contract include general (or direct) damages, which compensate for the value of the promised performance, and consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach." *Appliance Giant, Inc. v. Columbia 90 Assoc., LLC*, 779 N.Y.S.2d 611, 613 (N.Y. App. Div. 2004). An award of damages to make a company whole for which they could not fulfill a contract is not strictly a "return of fees" and thus, can be categorized correctly as "damages . . . which compensate for the value of promised performance." *Id.*

The Ace policy does not clearly and unambiguously preclude Plaintiff from recovering the arbitration award, as Defendants argue. The Ace policy contains a broad damages provision. While "return of fees" is excluded from the damages provision, the policy exempts from that exclusion "compensatory amounts equivalent to fees which are used as a measure of otherwise covered Damages." (Compl. Ex. A at 7). The damages Kemper was ordered to pay is specifically described by the arbitrator in the award as "compensatory" and an "element of Kemper's direct damages"; the compensatory damages are the equivalent to the fees Kemper had paid to Plaintiff; and the arbitrator used Kemper's payments to Plaintiff as a measure of covered damages. (Final Award at 37). A breach of contract claim should not be dismissed where, as here, "the pleading is sufficient and the plaintiff has an arguable claim under the contract." *Axiom Inv. Advisors, LLC v. Deutsche Bank AG*, 234 F. Supp. 3d 526, 537 (S.D.N.Y. 2017) (citing *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 56 (2d Cir. 2012)).

Defendants are correct that, as a general matter, "New York law is clear that the refund of monies to which a party is not entitled is not an insurable loss." *In re Ancillary Receivership of Reliance Ins. Co.*, 81 A.D.3d 533, 536, 918 N.Y.S.2d 25 (N.Y. App. Div. 2011) (collecting cases). But this caselaw generally refers to the proposition that "[a]n insurance policy may not cover an insured's obligation to return something which it improperly obtained," *i.e.*, restitution or disgorgement of ill-gotten gains. (Pl. Opp'n 18). Here, Kemper did not allege—and the arbitrator did not find—that Plaintiff improperly obtained any fees from Kemper or that Plaintiff completely failed to provide services. Rather, Kemper was dissatisfied with the services it received from Plaintiff. Context, which may be considered under New York and Virginia law, is relevant here. *See James River Ins. Co. v. Doswell Truck Stop, LLC*, 297 Va. 304, 306, 827 S.E.2d 374 (Va. 2019); *Kass v. Kass*, 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 696 N.E.2d 174 (N.Y. 1998). As Plaintiff emphasizes, these are professional services liability policies. A client generally seeks compensation in the amount of fees paid when a dispute over a perceived service deficiency arises. As Plaintiff argues, "[t]his is not disgorgement, restitution, or an actual return of fees – it's a request for compensation measured by the client's primary loss: The fees it paid for work performed where the result did not meet expectations." (Pl. Opp'n 12–13).

Defendants also assert that simply because the excess policies "follow the form" of the primary policy, their policy is still "separate and distinct contracts of insurance" and cannot be "bound" by the settlement of another insurer. (Def. Mot. at 14). However, this argument is unpersuasive.

"Follow form policies allow an insured that deals with multiple 'insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage.'" *Jin Ming Chen v. Insurance Company of the State of*

*Pennsylvania*, 36 N.Y.3d 133, 141 (2020).  "In other words, if the underlying policy covers certain conduct, the excess policy does as well." *Id.*  While a follow form provision cannot override a specific excess policy provision that is not the case here. *Id.* at 141-42.  There are no conflicting terms between the primary Ace Policy or the Defendants' policies when it comes to what constitutes damages or what excludes damages.  Additionally, the Ace Policy is expressly incorporated by all three of Defendants' policies.  More so, a primary policy's actions, or payments, can trigger an excess policy's duty and responsibility to the insured. *Ragins v. Hosps. Ins. Co.*, 22 N.Y.3d 1019, 1023, 4 N.E.3d 941 (2013).

As such, Plaintiff plausibly pleads a breach of contract claim.  Defendants Motion to Dismiss regarding Plaintiff's breach of contract claim is denied.

### III.    Plaintiff Sufficiently Pleads A Breach Of The Implied Covenant Of Good Faith And Fair Dealing Claim

Defendants additionally move to dismiss CSC's claim that Defendants breached the implied covenant of good faith and fair dealing.  Plaintiffs' Complaint sufficiently pleads that there was a breach of good faith in Defendants' refusal of coverage.  "A covenant of good faith and fair dealing is implicit in every insurance contract." *Roemer v. Allstate Indem. Ins. Co.*, 82 N.Y.S.3d 202, 204 (N.Y. App. Div. 2018).  This comes with the understanding that "a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims." *Id.* (internal quotation marks omitted).  To sufficiently plead bad faith, "the plaintiff must establish that the insurer's conduct constituted a 'gross disregard' of the insured's interests-- that is, a deliberate or reckless failure to place on equal footing the interests of its insured with its own interests when considering a settlement offer." *Pavia v. State Farm Mut. Auto. Ins. Co.*, 82 N.Y.2d 445, 453, 626 N.E.2d 24 (N.Y. 1993).  More so, bad faith is evident if the "insurer engaged in a pattern of behavior evincing a conscious or knowing indifference to the interests of

10

the insured." *Jian Liang v. Progressive Casualty Insurance Company*, 99 N.Y.S.3d 449, 452 (N.Y. App. Div. 2016).

CSC has alleged that despite almost a year of urging Defendants to investigate, or discuss the coverage of the policy, CSC was met with a stonewall response of outright refusal that coverage was owed.  (Compl. ¶¶ 95–103).  Additionally, after CSC raised an issue with Defendants' interpretation of the policy, Defendants at no point conducted an investigation into the policies that CSC mentioned were at issue.  (Compl. ¶ 97).  Thirteen days after CSC's letter, Defendant responded with their original intent to deny the coverage request.   (Compl. ¶ 97).  More so, Defendants admit they did not investigate CSC's position, but contend that that point is "irrelevant."  (Def. Reply at 9–10).  As such, Plaintiff has stated a sufficient claim here.  Defendants' Motion to Dismiss regarding Plaintiff's breach of the implied covenant of good faith and fair dealing is denied

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss, [ECF No. 49], is DENIED. IT IS FURTHER ORDERED that Plaintiff's letter motion for oral argument, [ECF No. 58], is DENIED.

**SO ORDERED.**

**Date:  September 29, 2021**
**New York, NY**                                                          **MARY KAY VYSKOCIL**
                                                                          **United States District Judge**